## COMMONWEALTH *vs.* DENNIS M. DAYE.

Suffolk. February 7, 1984. — September 24, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Identification. Evidence,* Identification, Testimony before grand jury, Testimony of third party respecting identification, Hearsay, Prior inconsistent statement. *Constitutional Law,* Confrontation of witnesses.

At a criminal trial the judge erred in admitting, for its probative value, testimony by a police officer that a witness had identified a photograph of the defendant from a pretrial photographic array, where the witness denied having made the identification and testified that he had no memory of the photographic array. [58-62]

At the trial of indictments arising from a shooting, the judge erred in permitting the jury to consider, for its probative value, a police officer's testimony that a witness had selected from a pretrial photographic array a particular photograph as representing the gunman and in admitting the photograph in evidence through the police officer's testimony, where the witness's own testimony suggested that he had selected two different pictures from the array as representing the gunman, and where the witness was not asked at trial to identify any photograph as the one he had previously selected. [62-63]

The "past recollection recorded" exception to the hearsay rule had no application to permit a witness's grand jury testimony to be admitted as probative evidence at a criminal trial, where the witness at trial denied the truth of his statement to the grand jury implicating the defendant in the crimes with which he was charged, and also denied having any first-hand knowledge of the defendant's involvement. [63-65]

As matter of common law this court announced the rule that a prior inconsistent statement of a witness at a criminal trial is admissible in evidence for its probative value if it was made under oath before a grand jury, provided the witness can be effectively cross-examined at trial as to the accuracy of the statement, the statement was not coerced and was more than a mere confirmation or denial of an allegation by the interrogator, and other evidence is presented tending to prove the issue to which the prior inconsistent statement relates. [65-75] LIACOS & O'CONNOR, JJ., dissenting.

INDICTMENTS found and returned in the Superior Court Department on May 6, 1980.

The cases were tried before *Roger J. Donahue,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Michael A. Laurano* for the defendant.

*Michael J. Traft,* Assistant District Attorney (*Joshua D. Werner,* Assistant District Attorney, with him) for the Commonwealth.

ABRAMS, J. We granted further appellate review to consider the Commonwealth's request that we adopt Proposed Mass. R. Evid. 801 (d) (1) (A),[1] permitting the introduction of limited categories of prior inconsistent statements for their probative worth. The defendant, Dennis M. Daye, was convicted at a jury trial on indictments charging him with assault by means of a dangerous weapon and unlawfully carrying a firearm, and, on an indictment for assault with intent to murder, of the lesser included offense of assault with intent to kill. Daye appealed to the Appeals Court, alleging error in the admission of testimony regarding pretrial photographic identifications and grand jury statements by witnesses who would not, or could not, identify him at trial. The Appeals Court reversed, see *Commonwealth* v. *Daye,* 16 Mass. App. Ct. 645 (1983), and we agree with that court that a new trial is required. We are persuaded, however, by arguments in favor of the admissibility of a witness's inconsistent grand jury testimony for its probative value. We therefore alter, with certain limitations to be discussed in this opinion, our common law evidentiary rule that such statements are admissible only for impeachment purposes. We leave for future resolution on a case-by-case basis questions

---

[1] Proposed Mass. R. Evid. 801 (d) (1) (A) reads as follows: "(d) Statements which are not hearsay. A statement is not hearsay if — (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." Grand jury testimony falls within the "other proceeding" category. See, e.g., *United States* v. *Coran,* 589 F.2d 70, 76 (1st Cir. 1978); *United States* v. *Mosley,* 555 F.2d 191, 193 (8th Cir.), cert. denied, 434 U.S. 851 (1977); *United States* v. *Castro-Ayon,* 537 F.2d 1055, 1057 (9th Cir.), cert. denied, 429 U.S. 983 (1976).

concerning the probative use of other inconsistent statements within Proposed Mass. R. Evid. 801 (d) (1) (A).[2]

We summarize the facts. In the late evening of April 24, 1980, two youths began to wrestle on a sidewalk adjacent to a bar in the city of Revere. Shortly thereafter, a man emerged from the bar, stated that "[t]here'll be no fighting down here," and ordered the youths to "go around the corner." Following an altercation with one of the combatants, the man produced a gun and, from a distance of two feet, shot the youth in the lower abdomen. The man returned the gun to his pocket, and, in the company of another man who appeared from the bar after the shot was fired, walked away, commenting that the victim "didn't listen." The gunman and his companion entered an automobile parked down the street from the bar and drove away.

The evidence implicating the defendant consisted principally of one in-court identification of him as the gunman by an eyewitness who admitted on cross-examination that earlier he had identified a codefendant, Michael Prochilo,[3] as the gunman during a lineup conducted several days after the shooting.[4] The victim and five other witnesses present at the scene of the shooting were unwilling or unable to identify the defendant in

---

[2] Although the probative use of prior inconsistent statements from depositions in civil cases may follow inevitably from our decision, we need not address that issue today. We note, however, that in civil cases no constitutional issues concerning the right of confrontation are presented, and that, in any event, the deponent usually will have been subjected to contemporaneous cross-examination. We likewise do not reach the probative use of prior inconsistent statements from probable cause hearings or prior trials in instances where the witness is available to testify. Compare *Commonwealth* v. *DiPietro,* 373 Mass. 369 (1977) (witness invoked privilege); *Commonwealth* v. *Mustone,* 353 Mass. 490 (1968) (witness unavailable).

[3] Michael Prochilo was tried with the defendant and convicted as an accessory after the fact to assault with intent to kill. There was testimony placing Prochilo in the bar at the time the shot was fired, as well as testimony identifying Prochilo as the man who walked away with the gunman. No issues relating to Prochilo's conviction are presented on this appeal.

[4] The defendant did not participate in the lineup.

court.[5] There was evidence that three of those witnesses, including the victim, also identified Prochilo as the gunman prior to trial. Statements elicited from some of the witnesses at trial suggest that their testimony may have been colored by fear of reprisals if they made an identification at trial.[6]

The evidentiary issues we are asked to decide are affiliated with the Commonwealth's attempts to demonstrate that witnesses who did not identify the defendant at trial had done so from pretrial photographic arrays and before the grand jury. We consider initially evidentiary rulings that we conclude were erroneous and require a new trial.

1. *Pretrial photographic identifications.* The defendant challenges the judge's ruling permitting the Commonwealth to elicit from a police officer evidence that Steven Ciambelli and James O'Connor, two witnesses to the shooting, positively identified photographs of the defendant as the gunman from pretrial photographic arrays.

On the stand, Ciambelli[7] stated that he was fifteen feet from the gunman at the time of the shooting. Ciambelli recalled selecting from a photographic array one or two pictures of "men that I [had] seen on the corner that night," but asserted that, at the time, he did not know what the gunman looked like. Ciambelli explicitly disclaimed having made a positive identification of the gunman. The prosecutor presented Ciambelli with a stack of photographs and asked Ciambelli whether

---

[5] One witness, whose testimony is not at issue on this appeal, asserted that, at a pretrial photographic array, he had selected Dennis Daye's photograph as representative of the gunman, but that the defendant at trial did not look like the man in the photograph.

[6] The victim said his father and friends had advised him not to make an identification, and stated that "I want to forget I got shot." The other participant in the tussle preceding the shooting said his father, after receiving threats, warned him that he (the witness) might be shot if he testified. A third witness, who appeared at a pretrial lineup wearing a hood tied tightly over his face, stated at trial that "I don't want to be involved with this, really, because I didn't really see nothing at all," but denied being afraid to testify.

[7] Ciambelli was one of the witnesses who identified Prochilo as the gunman at the lineup.

the photographs resembled those in the array he had looked through. Ciambelli stated he had no memory of the prior array.

O'Connor said he was in the doorway of the bar when the shooting took place, and that he saw the gunman. He also observed a second man who walked away with the gunman. O'Connor recalled going to the police station and selecting from a photographic array "a couple of different pictures" of "what I thought was the shooter." Asked whether he had selected a photograph of the gunman's companion, O'Connor said, "No, I don't think so." O'Connor stated that, disobeying a police officer's instructions, he had flipped over one of the photographs he selected and observed the name Dennis Daye on the back. He did not recall whether he saw the name before or after selecting the photograph, but said he picked the photograph not because of the name but "because I thought . . . that was the person [who shot the victim]." O'Connor was not asked at trial to identify the photographs he had chosen from the array. He said he did not see the gunman in the courtroom.

After Ciambelli and O'Connor had been dismissed as witnesses, the prosecution called a police officer, who stated he was present when Ciambelli and O'Connor looked through the photographic array. Over the defendant's objection, the officer said that Ciambelli had positively identified a photograph of the gunman and a photograph of the gunman's companion. On the stand, the officer identified the photographs chosen by Ciambelli and stated that the photograph of the gunman was a picture of the defendant, whereas the companion's photograph was that of the codefendant. The officer said that O'Connor separately had selected the same photographs and had likewise positively identified the defendant as the gunman and the codefendant as the companion. The officer stated that fifteen of the twenty-five photographs in the array had names on the backs, but that the defendant's picture did not. The photographs which, according to the officer, the witnesses selected were introduced in evidence. The judge instructed the jury that the officer's testimony concerning Ciambelli's and O'Connor's identifications could be considered as evidence of the defendant's guilt. The defendant's claim is that the police officer's

testimony regarding Ciambelli's and O'Connor's photographic identifications should not have been admitted as probative evidence and should have been limited by the judge to impeachment. We agree.

We have permitted the introduction with limiting instructions, if requested, of the testimony of a person who observed an extrajudicial identification to impeach the testimony of a witness who denies making an identification. *Commonwealth* v. *Swenson,* 368 Mass. 268, 274 (1975). We have held such evidence admissible to corroborate a witness's testimony that he or she made an extrajudicial identification. *Commonwealth* v. *Repoza,* 382 Mass. 119, 130 (1980).[8] Where a witness does not identify a defendant at trial, but acknowledges making an extrajudicial identification of the defendant, we have upheld the use of that evidence as probative of the identification. *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 409 (1978). The question now presented is whether testimony by a person other than the identifying witness concerning an extrajudicial identification is admissible for its probative worth when the identifying witness does not acknowledge the identification or does not explicitly state that he identified the defendant.

---

[8] The testimony of a nonidentifying witness concerning an extrajudicial identification by the identifying witness was, until recently, admissible only "to corroborate the fact that [the identifying witness] did *at that time and place* make the identification, *not as proof of the truth of the identification itself*" (emphasis added). *Commonwealth* v. *Leaster,* 362 Mass. 407, 412 (1972). See *Commonwealth* v. *Repoza, supra* at 129-130 (witness testified at trial that on prior occasion, after seeing the defendant, witness told police officer, "That's him. That's the one who stabbed [the victim]"; police officer also permitted to testify that, on that occasion, witness made that statement). In *Commonwealth* v. *Weichell,* 390 Mass. 62, 71 (1983), cert. denied, 465 U.S. 1032 (1984), we stated however, that "[s]ince juries may have trouble making the distinction between corroboration evidence and substantive evidence, the elimination of this distinction is salutary." Thus, identification evidence formerly admissible as corroborative is now admissible for its probative value. *Id.*; see *id.* at 86-87 & n.6 (Liacos, J., dissenting). However, testimony by a nonidentifying witness that differs in material respects from the testimony of the identifying witness concerning a particular extrajudicial identification or that concerns an extrajudicial identification at a different time or place not acknowledged by the identifying witness cannot be considered corroborative or probative and remains within the hearsay proscription.

Prior identifications are admissible as probative evidence notwithstanding their hearsay attributes because of the superior probative worth of an identification made closer in time to the events in question. *Commonwealth* v. *Weichell,* 390 Mass. 62, 71 (1983); *id.* at 87 (Liacos, J., dissenting). Where, however, the extrajudicial identification is established not by the identifying witness but by a person who observed the identification, we believe that probative worth is outweighed by "the hazard of error or falsity in the reporting." McCormick, The Turncoat Witness: Previous Statements as Substantive Evidence, 25 Tex. L. Rev. 573, 588 (1947). Where there is a dispute not only as to the accuracy of a pretrial identification, but also as to whether the identification was in fact made, "the evidential value of the prior identification is almost completely dissipated." *Commonwealth* v. *Swenson,* 368 Mass. 268, 273 n.3 (1975). Thus, a police officer's attribution to a witness of a positive identification denied by the witness at trial is not admissible to prove the identification. Its effect is limited to impeachment. See *Commonwealth* v. *Furtick,* 386 Mass. 477, 481 n.2 (1982); *Commonwealth* v. *Swenson, supra.* See also *Commonwealth* v. *Amado,* 387 Mass. 179, 186 (1982).[9] The judge therefore erred in permitting the police officer's tes-

---

[9] The result we reach regarding the admissibility of prior identifications is consistent with our holding today that prior inconsistent statements are admissible as probative only if it is uncontroverted that the identification or statement was made. See text, *infra* at 72. Thus, the Commonwealth may not circumvent limitations on the probative use of prior inconsistent statements by seeking to introduce a prior inconsistent statement as a statement of identification under Proposed Mass. R. Evid. 801 (d) (1) (C), a rule consistent with our cases governing probative use of extrajudicial identifications. See *Commonwealth* v. *Weichell,* 390 Mass. 62, 71-72 (1983); *Commonwealth* v. *Vitello,* 376 Mass. 426, 458-459 (1978). Although Proposed Mass. R. Evid. 801 (d) (1) (C), which tracks the Federal rule, does not explicitly preclude substantive use of extrinsic evidence of an extrajudicial identification denied by the identifying witness, *Commonwealth* v. *Furtick, supra,* we are in accord with those courts and commentators that have construed rule 801 (d) (1) (C) as inapplicable to such third-party testimony. See *United States* v. *Lewis,* 565 F.2d 1248, 1252 (2d Cir. 1977), cert. denied, 435 U.S. 973 (1978); 4 J. Weinstein & M. Berger, Evidence, par. 801 (d) (1) (C) [01], at 801-130 - 801-132 (1981). See also K. Wall, Eyewitness Identification in Criminal Cases 161-162 (1965).

timony to be considered by the jury as probative evidence that Ciambelli identified the defendant as the gunman.

We reach a similar conclusion with regard to the officer's statement as to O'Connor's identification. In contrast to Ciambelli, O'Connor admitted identifying the gunman from the photographic array. However, whereas O'Connor's testimony suggested that he selected two "different" pictures from the array as representing the gunman, the officer stated that O'Connor positively identified one photograph of the gunman and one of the companion. Of greater significance, O'Connor was not asked to pick out the photograph of the gunman he had selected, nor did he testify that he had recognized that photograph as one of the defendant. The officer's statement, after O'Connor had left the stand, was not, therefore, limited to corroboration but added to O'Connor's identification two elements of significance to the question of the defendant's guilt: (1) that O'Connor identified only one photograph as representing the gunman, and (2) that that photograph was one of the defendant.

In *Commonwealth* v. *Vitello,* 376 Mass. 426 (1978), we held that where a witness to a robbery no longer remembered what the robber looked like but remembered positively identifying a photograph of the robber, and was able to identify that photograph in court, a police officer's testimony that the photograph selected was one of the defendant was admissible for its probative worth in light of evidence that the defendant's appearance had changed since the time of the photographic identification. *Id*. at 459-460. In this case, however, the photograph of the gunman was put in evidence not through O'Connor, the identifying witness, but through the police officer. Had O'Connor admitted identifying a photograph of the gunman but denied so identifying the specific photograph offered in evidence, the officer's testimony that O'Connor had identified that photograph would have been inadmissible for its probative worth for the reasons we have set forth in connection with the officer's testimony regarding Ciambelli's photographic identification. The witness was not asked to identify the photograph he selected. The Commonwealth cannot improve its posi-

tion by declining to ask the identifying witness to select at trial the photograph previously identified. Thus, the judge should not have admitted as probative evidence the officer's statement that the photograph offered by the Commonwealth was positively identified by O'Connor as that of the gunman.

2. *Grand jury testimony.* After Ciambelli denied making a pretrial photographic identification of the defendant as the gunman, and stated that "I didn't know what he [the shooter] looks like," the prosecutor questioned him about his grand jury testimony. Over the defendant's objection, Ciambelli was permitted to read from the grand jury transcript that he had stated to the grand jury that he had identified Dennis Daye as the gunman.[10] After reading the defendant's name from the transcript,

---

[10] The witness testified as follows:

THE PROSECUTOR: "Mr. Ciambelli, when you appeared before the Suffolk County Grand Jury on May 5th, did you give testimony at that time?"
THE WITNESS: "Yes, I did."
THE PROSECUTOR: "And did you give testimony to the best of your recollection as to what you saw and heard on April 24th."
THE WITNESS: "No."
THE PROSECUTOR: "What's your answer to that?"
THE WITNESS: "No."
THE PROSECUTOR: "Well, what did you do before the Suffolk County Grand Jury? What kind of testimony did you give?"
THE WITNESS: "An exaggerated one."
THE PROSECUTOR: "Exaggerated? What did you exaggerate?"
THE WITNESS: "I told things that weren't true."
THE PROSECUTOR: "What?"
THE WITNESS: "I can't recall. You'll have to give me the sheet and let me look at it because I can't remember."
. . .
THE PROSECUTOR: "Now, sir, were you asked before the Suffolk County Grand Jury to identify the man with the gun?"
THE CODEFENSE COUNSEL: "Objection."
THE DEFENSE COUNSEL: "Objection."
THE WITNESS: "No, I wasn't."
. . .
THE PROSECUTOR: "You weren't asked that? On page 12, gentlemen. Were you asked that question?"
THE WITNESS: "(Reading.) That's in there. I didn't identify him in person."

Ciambelli volunteered that "I don't know Dennis Daye and I never seen him. That's just a name that was going around." Ciambelli stated he did not see Dennis Daye in the courtroom.

At side bar, the prosecutor specifically stated he did not intend to use the grand jury testimony for purposes of impeachment, but argued instead its probative admissibility as past recollection recorded. Admission of the testimony on that basis over the defendant's objection without a limiting instruction was error. We have previously expressed "serious doubt" whether grand jury testimony is admissible under the "past recollection recorded" exception to the hearsay rule. *Commonwealth* v. *Bookman,* 386 Mass. 657, 664-665 (1982). We need not decide that question, however, because it is plain that the requirements of that exception are not met in this case. When a witness has no current recollection of a particular event, the witness may incorporate in his testimony "a writing expressive of his past knowledge," *Bendett* v. *Bendett,* 315 Mass. 59, 64 (1943), provided the witness, "having firsthand knowledge of the facts recorded in the memorandum, [is] able to testify that the memorandum written or observed by him was true at the

---

THE PROSECUTOR: "Sir, I asked you a question. Were you asked that question? 'Who did you identify as the man with the gun?' Did you give an answer to that question?"

THE WITNESS: "Yes, I did."

THE PROSECUTOR: "And who did you identify?"

THE WITNESS: "Dennis Daye, but I don't —"

THE DEFENSE COUNSEL: "Object, Your honor."

THE WITNESS: "I don't know Dennis Daye and I never seen him. That's just a name that was going around. That's all."

THE PROSECUTOR: "Sir, my question to you was were you asked before the Suffolk County Grand Jury 'And who did you identify as the man with the gun?' and did you give an answer to that question?"

THE WITNESS: "Yes, I gave an answer."

THE PROSECUTOR: "And what was the answer you gave?"

THE WITNESS: "Dennis Daye."

THE PROSECUTOR: "And that was not part of your exaggerated testimony, was it?"

THE WITNESS: "Yes, it was."

. . .

THE PROSECUTOR: "Do you see Mr. Dennis Daye in Court today?"

THE WITNESS: "No, I don't."

time it was made." *Commonwealth* v. *Bookman, supra* at 663. See P.J. Liacos, Massachusetts Evidence 92-94 (5th ed. 1981). Ciambelli, however, denied at trial both first-hand knowledge of the defendant's involvement in the crime and the truth of his statement to the grand jury implicating the defendant. Cf. *Commonwealth* v. *Greene,* 9 Mass. App. Ct. 688, 690 (1980).[11]

3. *Probative use of prior inconsistent statements.* On the basis of the errors described above, we conclude that a new trial is required. We are unpersuaded by the Commonwealth's argument that any evidentiary errors relating to extrajudicial identifications of the defendant by Ciambelli and O'Connor should be treated as harmless because the identifications were cumulative of other evidence implicating the defendant. In this case, only one witness identified the defendant in court as the gunman, and that identification was impeached by evidence of a prior identification by the same witness of another person as the gunman. The evidence, although sufficient to justify verdicts against the defendant, was not overwhelming. We are not persuaded that, in this context, it was harmless to permit the jury to consider at probative value evidence of independent identifications by other witnesses of the defendant as the gunman. Because a new trial is required, we consider the Commonwealth's request that we adopt Proposed Mass. R. of Evid. 801 (d) (1) (A) and that we rule that a witness's prior inconsistent statements may be admitted for probative purposes.[12]

---

[11] Ciambelli's grand jury testimony was likewise inadmissible as present recollection refreshed. A writing may be used to revive a witness's recollection of events observed by the witness, but, so utilized, the writing has no evidentiary value and should not be read to the jury. *Commonwealth* v. *Parrotta,* 316 Mass. 307, 312 (1944). *Bendett* v. *Bendett, supra* at 63. P.J. Liacos, Massachusetts Evidence, *supra* at 87. Moreover, it must be clear that when, assisted by the writing, the witness testifies in the presence of the jury, the witness is testifying from present memory rather than reciting the contents of the writing. *Commonwealth* v. *Hoffer,* 375 Mass. 369, 376 (1978).

[12] The issue of the admissibility of a prior inconsistent statement as probative evidence was briefed to the Appeals Court by the Commonwealth, but not discussed by that court in its opinion. A request that we consider the issue was the sole basis for the application for further appellate review granted by this court, and the issue was the only one addressed at oral argu-

The settled rule in this Commonwealth is the "orthodox" one that prior inconsistent statements, though admissible for the limited purpose of impeaching the credibility of a witness's testimony at trial, are inadmissible hearsay when offered to establish the truth of the matters asserted. *Commonwealth* v. *Bookman,* 386 Mass. 657, 665 (1982). *Commonwealth* v. *Thompson,* 362 Mass. 382, 386 (1972). *Salonen* v. *Paanenen,* 320 Mass. 568, 575 (1947). *Commonwealth* v. *Turner,* 224 Mass. 229, 237 (1916). See P.J. Liacos, Massachusetts Evidence, *supra* at 141; 3A J. Wigmore, Evidence § 1018 (b) at 996-998 (Chadbourn rev. 1970). By contrast, Fed. R. Evid. 801 (d)(1)(A), incorporated verbatim in Proposed Mass. R. Evid. 801 (d) (1) (A), permits probative use of inconsistent grand jury testimony, as well as other categories of inconsistent statements given under oath, in instances where "[t]he declarant testifies at the trial . . . and is subject to cross-examination concerning the statement." Although we have declined to adopt the Proposed Rules as a whole, we have noted their value as a comparative standard for the common law evolution of our evidentiary law, see *Commonwealth* v. *Weichell,* 390 Mass. 62, 71-72 (1983), and have invited parties to cite the rules in their briefs. Announcement Concerning the Proposed Massachusetts Rules of Evidence (December 30, 1982). The Commonwealth has done so, and argues that the time has come to abandon the orthodox rule in favor of the approach suggested in Proposed Mass. R. Evid. 801 (d) (1) (A).

The orthodox view against probative admissibility of prior inconsistent statements is founded on the general rationale for

ment. Although it appears from the record that the Commonwealth did not argue at trial that the evidence should be admitted for its probative worth as a prior inconsistent statement, in light of the futility of such a request to the trial judge under our then existing evidentiary law, we think the issue is properly presented even though raised for the first time on appeal. We therefore discuss, in our capacity as "the arbiter of State evidentiary law," *post* at 77 (Liacos, J., dissenting in part), the potential admissibility at the new trial of the grand jury testimony as a prior inconsistent statement offered as probative evidence.

No constitutional challenges to the evidentiary rule advocated by the Commonwealth are presented at this juncture, and we leave resolution of any such challenges for a time when such issues are properly before us.

the exclusion of hearsay, namely, that the reliability of a prior inconsistent statement "rests on the credit of the declarant, who was not (1) under oath, (2) subject to cross-examination, or (3) in the presence of the trier, when the statement was made." McCormick, Evidence § 251, at 601 (2d ed. 1972). This rationale for exclusion has come under attack from numerous prominent commentators, who think the dangers the hearsay rule was designed to protect against are dissipated to a large extent when, as in the case of prior inconsistent statements, the extrajudicial declarant is present at trial. See, e.g., 3A J. Wigmore, *supra* at 996; Morgan, Hearsay Dangers and the Application of the Hearsay Concept, 62 Harv. L. Rev. 177, 192 (1948); McCormick, The Turncoat Witness: Previous Statements as Substantive Evidence, 25 Tex. L. Rev. 573 (1947). See also *Commonwealth* v. *Weichell, supra* at 70 n.7. Some proponents of the "modern view" advocate probative use of all prior inconsistent statements on the grounds that the oath is not a significant safeguard of reliability and that counsel's opportunity to cross-examine the declarant at trial, and the jury's opportunity to view the declarant's demeanor at trial, satisfy the other concerns. See Comment, Prior Inconsistent Statements: Conflict Between State and Federal Rules of Evidence, 34 Mercer L. Rev. 1495, 1498-1500 (1983). A less extreme "modern" position, reflected in the rule the Commonwealth advises us to adopt, accepts at probative value only those prior inconsistent statements given under oath in instances where a record of the statement is likely to be available.

The schism between adherents of the "orthodox" and "modern" doctrines is accounted for in large part by divergent viewpoints as to the validity of the premise that the presence of the extrajudicial declarant at trial constitutes adequate protection for the lack of contemporaneous cross-examination of the declarant at the time the subsequently disavowed statement was made.[13] Supporters of the modern view argue that, at least

---

[13] If the witness affirms the truth of the prior statement, he adopts it and no hearsay problem is presented. 4 J. Weinstein & M. Berger, *supra*, par. 801(d)(1)(A)[02] at 801-90 to 801-91. Questions concerning the probative admissibility of prior inconsistent statements arise in instances where the

where the witness at trial does not disclaim memory of the circumstances under which the prior statement was made, the reliability of the statement can be tested notwithstanding the witness's recantation. "Cross-examination [at trial] can probe the witness' perception and memory and can develop all the reasons why the witness made a statement which he now insists was not true." 4 J. Weinstein & M. Berger, Evidence par. 801(d) (1)(A)[03] at 801-92 (1981). See McCormick, The Turncoat Witness: Previous Statements as Substantive Evidence, 25 Tex. L. Rev. 573, 577 (1947) (questioning at trial "will lay bare the sources of the change of face, in forgetfulness, carelessness, pity, terror or greed, and thus reveal which is the true story and which the false"). Partisans of the orthodox view retort that prior inconsistent statements, if admitted for probative purposes, are endowed with an "indestructible" quality superior to that of testimony at trial. "Nothing that happens to the witness inside the courtroom can deprive the fact finder of the right to believe the [extrajudicial statement]. Indeed, if the witness inside the courtroom were to be attacked with the usual devices of the cross-examiner and shown to be untrustworthy, that would merely make it all the more likely that the fact finder would decide to believe the [extrajudicial statement]." Blakey, Substantive Use of Prior Inconsistent Statements Under the Federal Rules of Evidence, 64 Ky. L.J. 3, 44-45 (1975-1976). A fact finder's disbelief of a witness's contradiction of a prior statement at trial, it is argued, "sheds no direct light on the accuracy of [the] pretrial statement," *California* v. *Green,* 399 U.S. 149, 193 (1970) (Brennan, J., dissenting), and does not, therefore, adequately ensure the reliability of the extrajudicial statement's factual content.

The proponents of the modern view argue that doubts as to the effectiveness of cross-examination at trial should, as a matter of public policy, be resolved in favor of probative use of prior inconsistent statements because a contrary rule en-

witness denies, or asserts a lack of memory with regard to, the making of a statement or its veracity. See *Ruhala* v. *Roby,* 379 Mich. 102, 124 (1967); 4 J. Weinstein & M. Berger, *supra.* See also notes 16 & 17, *infra.*

courages witness intimidation and deprives the prosecution of evidence necessary to prove cases against criminal defendants in instances where key witnesses recant their testimony. To this policy argument is added the pragmatic argument that juries cannot, and perhaps should not, be expected to discriminate between impeachment and probative use of a prior inconsistent statement, and that formally conferring probative status to such statements does no more than legitimize current practice.

The orthodox view, on the other hand, is defended on the ground that a witness may recant former statements for reasons other than intimidation, see Blakey, *supra* at 46, and that probative use of prior inconsistent statements permits convictions based on ex parte statements to prosecutorial authorities that may be fabricated, distorted, or erroneous. See *State* v. *Spadafore,* 159 W. Va. 236 (1975). Further, the distinction between probative and impeachment use of prior inconsistent statements, it is argued, even if elusive to some jurors, is one of importance to the courts in adjudicating issues relating to sufficiency of the evidence. See *California* v. *Green, supra* at 194 n.6 (Brennan, J., dissenting).

The history of Fed. R. Evid. 801(d)(1)(A) illuminates the controversy over the evidentiary status of prior inconsistent statements. In 1970, the United States Supreme Court, although not called on to decide, as between the orthodox and modern views, "which of these positions, purely as a matter of the law of evidence, is the sounder," *California* v. *Green, supra* at 155, held that, as a Federal constitutional matter, acceptance of prior inconsistent statements for their probative value does not violate the Sixth Amendment Confrontation Clause "as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *Id.* at 158. See *Nelson* v. *O'Neil,* 402 U.S. 622 (1971).

As drafted in the Proposed Federal Rules of Evidence promulgated by the Supreme Court in 1972, Fed. R. Evid. 801(d)(1)(A) would have sanctioned, as an evidentiary matter, the probative admissibility of prior inconsistent statements to the full extent constitutionally permissible. Rules of Evidence for

United States Courts and Magistrates, 56 F.R.D. 183, 293 (1972). Although the United States Senate favored adoption of the Supreme Court rule, permitting probative use of prior inconsistent statements irrespective of the circumstances under which they were made, S. Rep. No. 1277, 93d Cong., 2d Sess. 13, reprinted in 1974 U.S. Code Cong. & Ad. News 7051, 7062-7063, the House Judiciary Committee advocated a stricter rule admitting only those statements made under oath and subject to cross-examination, H.R. Rep. No. 650, 93d Cong., 2d Sess. 13, reprinted in 1974 U.S. Code Cong. & Ad. News 7075, 7086-7087. Under the House version, inconsistent grand jury testimony would have remained within the hearsay category. As adopted, Fed. R. Evid. 801 (d)(1)(A) constitutes a compromise between the two positions. The House requirement that the statement have been made under oath was retained, thereby eliminating the risk of manufactured third-party testimony by restricting probative admissibility to situations in which there is likely to be a written transcript or tape recording providing "overwhelming proof that the witness did in fact make the prior inconsistent statement," Blakey, *supra* at 10. The compromise version eliminated the requirement of contemporaneous cross-examination, however, thereby allowing the probative use of inconsistent grand jury testimony.

In the wake of the adoption of Fed. R. Evid. 801 (d)(1)(A), other jurisdictions remain divided over the probative admissibility of prior inconsistent statements. At the present time, other States can be categorized in roughly equal numbers into groups following, respectively, the Federal rule, the more expansive Supreme Court version, and the orthodox rule.[14] A

---

[14] Fifteen States, by statute or common law, follow, at least in criminal cases, rules identical or substantially identical to Fed. R. Evid. 801 (d)(1)(A). Sixteen States espouse, with minor variation, the more expansive rule initially proposed by the United States Supreme Court, permitting substantive use of all prior inconsistent statements of a witness available for cross-examination at trial. Sixteen States adhere to the orthodox rule precluding any substantive use. Two States have adopted the House version, conditioning substantive admissibility on a showing that the declarant was under oath and subject to cross-examination at the time the statement was made. See

majority of States permit the probative use of inconsistent grand jury testimony.

We take note of these developments and are persuaded that the reasoning favoring use of inconsistent grand jury statements as probative evidence is sound. Because this case does not involve other categories of prior inconsistent statements referred to in Proposed Mass. R. Evid. 801 (d)(1)(A), we defer consideration of issues relating to the probative use of other prior inconsistent statements, see note 2, *supra,* believing that any further change will be best accomplished through the "incremental process of common law development" rather than a general rule. *Matter of Roche,* 381 Mass. 624, 639 & n.16 (1980). With regard to inconsistent grand jury statements, we are satisfied that the truth-seeking function of trials may be enhanced rather than diminished if consideration of their probative value is permitted. Where the presence of the declarant at trial creates an opportunity fully to explore the circumstances under which a grand jury statement was made and the veracity of its factual content, the absence of contemporaneous cross-examination does not in our opinion so impair the statement's reliability as to mandate that the fact finder be deprived of the right to accept the statement for its probative worth. "The jury is alerted by the inconsistency in the stories, and its attention is sharply focused on determining either that one of the stories reflects the truth or that the witness who has apparently lied once, is simply too lacking in credibility to warrant its believing either story." *California* v. *Green, supra* at 160. We believe that a fact finder should be permitted to prefer a grand jury statement made closer in time to the events at issue over contradictory trial testimony that the passage of time and intervening influences may have affected.[15] The prior statement will

4 J. Weinstein & M. Berger, Evidence, ¶ 801(d)(1)(A)[09] at 801-111 to 801-116 (1981 & Supp. 1983) (State by State listing); 3A J. Wigmore, Evidence § 1018(b) at 998-1007 n.3 (Chadbourn rev. 1970 & Supp. 1983) (same).

[15] The dissent relies heavily on Justice Mosk's opinion in *People* v. *Johnson,* 68 Cal. 2d 646, 654-655 (1968), cert. denied, 393 U.S. 1051 (1969), the holding and reasoning of which were expressly rejected in *Cali-*

have been made in an atmosphere of formality impressing upon the declarant the need for accuracy, and will be memorialized in a manner eliminating subsidiary inquiries into whether the statement was actually made that would unacceptably attenuate the statement's probative worth.

Permitting probative use of an inconsistent grand jury statement also eliminates an unnecessary and unseemly legal fiction. "The rule limiting the use of prior statements by a witness subject to cross-examination to their effect on his credibility has been described by eminent scholars and judges as 'pious fraud,' 'artificial,' 'basically misguided,' 'mere verbal ritual,' and an anachronism 'that still impede[s] our pursuit of the truth.' [Citations omitted] . . . [T]o tell a jury it may consider the prior testimony as reflecting on the veracity of the later denial of relevant knowledge but not as the substantive evidence that alone would be pertinent is a demand for mental gymnastics of which jurors are happily incapable." *United States* v. *De-Sisto,* 329 F.2d 929, 933 (2d Cir.), cert. denied, 377 U.S. 979 (1964). We are aware of "skepticism that a jury [is] able to maintain the distinction between an extrajudicial identification introduced for the purpose of corroboration and one introduced as probative evidence." *Commonwealth* v. *Weichell,* 390 Mass. 62, 86-87 (1983) (Liacos, J., dissenting). Thus, we conclude that the distinction between the two types of evidence should be abolished "in the context of identification evidence," *id.* at 86 n.6, so as to make evidence formerly limited to corroborative purposes admissible for probative purposes "in both practical and legal effect," *id.* at 87. See note 8, *supra.* Today, we do little more than harmonize the legal treatment of prior inconsistent statements with the practical effect of permitting the jury to consider such statements under the guise of impeachment.

---

*fornia* v. *Green, supra* at 151, 159-161 & n.13. The short answer to the dissent's concern about the effectiveness of cross-examination of the declarant at trial relative to contemporaneous cross-examination is that "[t]he most successful cross-examination at the time the prior statement was made could hardly hope to accomplish more than has already been accomplished by the fact that the witness is now telling a different, inconsistent story . . . ." *California* v. *Green, supra* at 159.

We believe, however, that several restrictions on the probative use of inconsistent grand jury statements are necessary.[16] First, both as an evidentiary and constitutional matter, the admissibility of such statements is contingent on an opportunity for effective cross-examination of the declarant at trial. When the witness at trial has no recollection of the events to which the statement relates, this requirement of an opportunity for meaningful cross-examination is not met.[17] See *California* v. *Green, supra* at 168-169 & n.18; 4 J. Weinstein & M. Berger, *supra,* par. 801(d)(1)(A)[06], at 801-108, par. 801(d)(1)(A)[07], at 801-109. In this case, however, Ciambelli testified as to the circumstances of his presence at the scene of the shooting[18] and as to the accuracy of his statement to the grand jury. If, notwithstanding the witness's rejection on the stand of his prior statement, a jury, based on their observation of the witness and

---

[16] To qualify as inconsistent, "[i]t is not necessary that the prior statement contradict in plain terms the testimony of the witness." *Commonwealth* v. *Simmonds,* 386 Mass. 234, 242 (1982). It suffices that the statement, "taken as a whole, either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of the witness." *Id.,* quoting *Commonwealth* v. *West,* 312 Mass. 438, 440 (1942). *Commonwealth* v. *Pickles,* 364 Mass. 395, 402 (1973).

[17] Although the witness must recall the underlying events to which a prior statement refers, the witness need not recall making the statement, provided there is evidence, such as a grand jury transcript, that the statement was made. See *Commonwealth* v. *Cobb,* 379 Mass. 456, 463-464, vacated in part on other grounds sub nom. *Massachusetts* v. *Hurley,* 449 U.S. 809 (1980); *Commonwealth* v. *Reddick,* 372 Mass. 460, 463 (1977). We leave open the question whether, when the circumstances at trial indicate that a witness is falsifying a lack of memory, a judge may admit the statement as "inconsistent" with the claim of lack of memory. See *United States* v. *Insana,* 423 F.2d 1165, 1170 (2d Cir.), cert. denied, 400 U.S. 841 (1970). See also *United States* v. *Shoupe,* 548 F.2d 636 (8th Cir. 1977); *United States* v. *Collins,* 478 F.2d 837, 838 (5th Cir.), cert. denied, 414 U.S. 1010 (1973). Cf. P.J. Liacos, Massachusetts Evidence 136 (5th ed. 1981) ("there is no inconsistency between a present failure of memory and a past existence of memory").

[18] We predicate probative use of prior inconsistent statements on a showing that the declarant was a percipient witness to the events in question. If it is clear from the context in which the statement was made that the statement was based on hearsay, rather than personal knowledge, the statement may not be admitted as probative evidence.

their common sense, were to conclude at retrial that Ciambelli's identification of the defendant before the grand jury has probative worth, we see no reason why our rules of evidence should preclude them from so doing.[19]

Second, a grand jury statement should be admitted in evidence only if it is clear that the statement was that of the witness, rather than the interrogator. Thus, a judge should exercise discretion in admitting a witness's "yes" or "no" answer to a leading, fact-filled question posed at the grand jury proceeding as probative evidence regarding the facts alluded to in the question.[20]

Although we today hold that inconsistent grand jury testimony may be admitted in limited circumstances for its probative worth,[21] we will not permit convictions based exclusively on inconsistent extrajudicial testimony to stand. See *California v. Green, supra* at 170 & n.19. In this case the Commonwealth must produce identification evidence in addition to a prior inconsistent statement in order to meet its burden of proof. Compare *Commonwealth v. Forde,* 392 Mass. 453, 457-458 (1984) (confessions); *Commonwealth v. Porter,* 384

---

[19] In light of our resolution of this case, we need not decide whether the prosecutor's use of grand jury testimony in questioning O'Connor constituted reversible error.

[20] A judge should also exclude as probative evidence any statement by a witness so pressured by the prosecutors or grand jurors that the witness reasonably could have thought it was incumbent on him "to come up with an answer, whether or not it was true." *United States v. Gonzalez,* 559 F.2d 1271, 1273 (5th Cir. 1977). For example, answers produced by the prosecutor's threats of contempt should be excluded. *Id.* Thus, grand jury testimony offered at probative value not only must be materially inconsistent with trial testimony but also must be free of indicia that the witness was coerced into making the statement.

[21] Before offering a prior inconsistent statement as probative evidence, counsel should ask for a voir dire, during which the witness should be reminded of the circumstances in which the statement was made and given an opportunity to explain the inconsistency. See *Commonwealth v. Kerrigan,* 345 Mass. 508, 512 (1963); *Commonwealth v. Fatalo,* 345 Mass. 85 (1962). The judge should then rule on the admissibility of the statement. If only a portion of the witness's grand jury testimony is introduced, the adverse party is of course entitled to introduce any remaining portions bearing on the inconsistency.

Mass. 647, 653 (1981) (evidence of consciousness of guilt). See also G. L. c. 233, § 20 (Legislature requires testimony of immunized witnesses be corroborated). We leave open what other evidence would be required where the issue to which the prior inconsistent statement relates is not identification.

In summary, we hold that a prior inconsistent statement is admissible as probative if made under oath before a grand jury, provided the witness can be effectively cross-examined as to the accuracy of the statement, the statement was not coerced and was more than a mere confirmation or denial of an allegation by the interrogator, and other evidence tending to prove the issue is presented. The judgments of the Superior Court are reversed, the verdicts set aside, and the case is remanded for a new trial.[22]

*So ordered.*

LIACOS, J. (concurring in part and dissenting in part, with whom O'Connor, J., joins). I agree with the court that a new trial is required in this case. I cannot join, however, in its unfortunate and unnecessary excursion into the realm of dictum as it discusses the future admissibility, for probative purposes, of prior inconsistent statements made before a grand jury. I cannot join the court in the latter venture for a variety of reasons, not the least of which is that this issue was not raised at trial and has not been briefed by both parties. The defendant's brief is silent on the question whether Proposed Mass. R. Evid. 801 (d) (1) (A), or some version of it, ought to be adopted. Also, neither party has briefed the serious issue of confrontation implicit under art. 12 of the Massachusetts Declaration of Rights.

Other serious substantive questions give rise to my disagreement. Before turning to them, however, it is worthwhile to point

---

[22] We find no merit in the defendant's claim that the prosecutor's closing argument, to the extent it suggested the witnesses' inconsistencies and contradictions were attributable to fear, was unwarranted by the evidence. See note 6, *supra*; *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 411 (1978).

out what the court has done on the facts of this case. The facts stated by the court are stated accurately, and need not be repeated at length. Neither the victim nor five other witnesses for the prosecution, present at the scene, were willing or able to identify the defendant at trial. Testimony of a police officer was admitted that two of these witnesses, Ciambelli and O'Connor, had identified the defendant as the assailant prior to trial by selecting the defendant's photograph from a photographic array. The officer's testimony as to the extrajudicial identification was admitted in evidence for probative purposes, i.e., as evidence that the defendant was the assailant. The court, reviewing our case law as to the circumstances in which a prior extrajudicial identification is admissible as an exception to the hearsay rule (or as "nonhearsay"; cf. Fed. R. Evid. 801[d][1] [C]), held the admission of this testimony to be reversible error. I agree.

Next, the prosecution sought to establish the identity of the assailant by offering Ciambelli's testimony before the grand jury which indicted the defendant. However, no transcript of the witness's grand jury testimony was proffered. Rather, the grand jury testimony was brought out by questions put to Ciambelli on direct examination.[1] The prosecutor offered the evidence for probative purposes under the exception to the hearsay rule known as past recollection recorded. The evidence was admitted as such, over the defendant's objection. The court holds, pursuant to *Commonwealth* v. *Bookman,* 386 Mass. 657 (1982), that this ruling also was reversible error. *Bookman* held, on similar facts, that the use of grand jury testimony as past recollection recorded was error because no showing of the prerequisites of admissibility had been made. *Id.* at 663-664. In this case the court has concluded that "it is plain that the requirements of that exception [past recollection recorded] are not met." *Ante* at 64. I agree.

In *Bookman,* we once again stated that "we have been generally skeptical as to the admissibility of grand jury minutes as probative evidence," *id.* at 664, and cases cited. The court,

---

[1] See main opinion at 63 n.10 for this testimony.

however, now suggests that the very same grand jury testimony of Ciambelli may be admissible as probative evidence at the new trial under a definition of nonhearsay analogous to the provisions of Proposed Mass. R. Evid. 801 (d) (1) (A). I am aware that the United States Supreme Court has sanctioned such an approach. See *California* v. *Green,* 399 U.S. 149 (1970); *Dutton* v. *Evans,* 400 U.S. 74 (1970). Nevertheless, the court, as the arbiter of State evidentiary law, should pause to consider the policy and practical impact of its approach to this issue. Although the court's opinion does not address these questions, there are two important matters worth noting. First, the court recognizes that the justification for admitting pretrial identification evidence as nonhearsay for probative purposes is "the superior probative worth of an identification made closer in time to the events in question." *Ante* at 61. Yet the court creates a rule that would admit less reliable identification evidence, often given at a much later time before a grand jury, as probative of the same fact. Second, the court does not acknowledge the possibility at retrial that (a) the grand jury testimony may come in to prove identification and (b) this "probative evidence" may serve as evidence of a prior identification which (c) may justify the admission of the police officer's testimony of prior identification. This Rube Goldberg contraption hardly is rational or consistent, as the court claims in n.9, *ante* at 61. Cf. *Commonwealth* v. *Furtick,* 386 Mass. 477, 481 n.2 (1980); *Commonwealth* v. *Swenson,* 368 Mass. 268, 273 n.3 (1975). Yet, the court opines that although it was error to let in the grand jury testimony as past recollection recorded, it might not be error to let in the *same evidence* to prove the *same fact* under its new theory of admissibility.

Last, in fashioning this new rule the court provides an excellent summary of the treatment of prior inconsistent statements of witnesses, and yet fixes on the weakest part of the new approach exemplified by Proposed Mass. R. Evid. 801 (d) (1) (A) as the point to start its venture into this hotly disputed area. It is difficult to comprehend why the court concludes that testimony given before a grand jury, not subject to contemporaneous cross-examination, is a better place to be "modern" rather than "orthodox." If a new rule is to be developed, a

stronger argument could be made to admit testimony given at a prior trial, probable cause hearing, or deposition where both the safeguards of an oath and the opportunity for contemporaneous cross-examination are present.[2] See *California* v. *Green,* 399 U.S. 149, 192-193 (1970) (Brennan, J., dissenting); *State* v. *Saporen,* 205 Minn. 358, 361-362 (1939); Blakey, Substantive use of Prior Inconsistent Statements Under the Federal Rules of Evidence, 64 Ky. L.J. 3, 44-45 (1975-1976). If the court is seeking to show its modernity, it appears to me to be starting at the least justifiable point. Apparently, the court itself is uneasy, for it seeks to temper the effect of its dictum by providing "safeguards" to admissibility such as a requirement of effective cross-examination at trial (*ante* at 73), lack of leading questions at the grand jury proceeding (at 74), the need for corroborative evidence (at 74), and the absence of coercion of the witness at the grand jury (at 74 n.20).

Perhaps the best statement on this "modern" approach was made by Justice Stanley Mosk of the Supreme Court of California. Justice Mosk, commenting on the validity of § 1235 of the California Evid. Code,[3] stated in *People* v. *Johnson,* 68 Cal. 2d 646, 654-655 (1968), cert. denied, 393 U.S. 1051 (1969): "[T]he draftsmen of section 1235 justify their new rule on the ground that it 'admits inconsistent statements of witnesses because the dangers against which the hearsay rule is designed to protect are largely nonexistent. The declarant is in court and may be examined and cross-examined in regard to his statements and their subject matter. . . . The trier of fact has the declarant before it and can observe his demeanor and the nature of his testimony as he denies or tries to explain away the inconsistency. Hence, it is in as good position to determine the truth or falsity of the prior statement as it is to determine the truth or falsity of the inconsistent testimony given in court.' . . . We cannot share the optimism of this

[2] In this context, I view the court's disclaimer that it is not ruling on the admissibility of such other prior inconsistent statements as holding out false hope to the unwary.

[3] California Evid. Code § 1235 provided in part: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing . . . ."

reasoning. As [Professor] Maguire has candidly admitted 'many trial lawyers will have none of this. They say it is a professorial pipe-dream. They have in mind considerations of practical policy. . . . (Maguire, Evidence: Common Sense and Common Law 59 [1947].) Perhaps the foremost practical objection to the academic approach is that it grossly underestimates the value of one of the characteristics which make cross-examination 'the greatest legal engine ever invented for the discovery of truth.' [5 J. Wigmore, Evidence 29 (3d ed. 1940).] To assert that the dangers of hearsay are 'largely nonexistent' when the declarant can be cross-examined at some later date, or to urge that such a cross-examination puts the later trier of fact in 'as good a position' to judge the truth of the out-of-court statement as it is to judge contemporary trial testimony, is to disregard the critical importance of *timely* cross-examination. It is the general rule that '[r]egularly, cross-examination should immediately follow direct examination. While it may be postponed by the court, this may not be done to the injury of the one having the right to cross-examine.' (58 Am. Jur., Witnesses, § 665; cf. *People* v. *Manchetti*, [1946] 29 Cal. 2d 452, 461 . . . .) For the reason of this rule, we need look no further than Wigmore's emphasis on the fact that 'the cross-examination *immediately succeeds* in time the direct examination. In this way the modification or the discredit produced by the facts extracted is more readily perceived by the tribunal. No interval of time elapses, to diminish or conceal their force.' (Italics in original.) [5 J. Wigmore, Evidence 34 (3d ed. 1940)]. This practical truth is daily verified by trial lawyers, not one of whom would willingly postpone to both a later date and a different forum his right to cross-examine a witness against his client."

The court today abandons a time honored rule, honed in experience, developed to enhance the process of discovering the truth in favor of a rule of expediency that enhances the likelihood of convictions. Although the United States Supreme Court has upheld the modern rule, whether art. 12 provides greater confrontation rights to a criminal defendant in this con-

text is, of course, undecided.[4] It would be better to have the court first consider the wisdom and logic of its rule on an adequately briefed record. At the very least, this case should have been put down for reargument on these issues.

Previously, I stated my views on the importance of adequate cross-examination in a somewhat different context: "'The right to confrontation is basically a trial right.' *Barber* v. *Page,* 390 U.S. 719, 725 (1968). It is designed to make prosecution witnesses available for full cross-examination by the defendant and to ensure that the testimony of a witness is given *under oath before the jury* who will have an opportunity to observe the demeanor *of the witness as he testifies*" (emphasis added). *Commonwealth* v. *Canon,* 373 Mass. 494, 502, 509 (1977) (Liacos and Abrams, JJ., dissenting). The court's venture today undeniably, and most regrettably, diminishes this right.

---

[4] Article 12 of the Declaration of Rights of the Massachusetts Constitution states in relevant part: "[E]very subject shall have a right to produce all proofs, that may be favourable to him; to meet the witnesses against him *face to face,* and to be fully heard in his defence by himself or his counsel, at his election" (emphasis supplied). Compare the less explicit language of the Sixth Amendment to the Federal Constitution: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." As I have stated earlier, the issue of the constitutionality of the court's new rule under the State Constitution has not been briefed, or decided. We have stated on many occasions that our State Constitution may give greater protection than those provided by the Federal Constitution. See, e.g. *Commonwealth* v. *Aponte,* 391 Mass. 494, 506 (1984); *Attorney Gen.* v. *Colleton,* 387 Mass. 790, 796, 801 (1982); *Moe* v. *Secretary of Admin. & Fin.,* 382 Mass. 629, 651 (1981).