## COMMONWEALTH vs. ELIJAH MUSE.

No. 92-P-1568.

Suffolk. September 15, 1993. - November 10, 1993.

Present: BROWN, FINE, & LAURENCE, JJ.

*Evidence*, Identification, Hearsay, Cross-examination. *Identification. Practice, Criminal*, Confrontation of witnesses.

At a criminal trial, the testimony of a police officer concerning an extrajudicial photographic identification of the defendant by a witness was sufficiently reliable to justify its admission; however, in circumstances in which the identifying witness was not asked on direct examination whether he recognized the photograph he had earlier selected, the defendant was deprived of the opportunity to conduct effective cross-examination with respect to that identification. [469-471] BROWN, J., concurring.

At a criminal trial, error in the admission of an extrajudicial photographic identification of the defendant was not prejudicial in light of the strong identification testimony of two other witnesses. [471-472] BROWN, J., concurring.

INDICTMENTS found and returned in the Superior Court Department on August 16, 1990.

The cases were tried before *Gordon L. Doerfer*, J.

*Teresa Walsh Habib* for the defendant.

*John P. Zanini*, Assistant District Attorney, for the Commonwealth.

FINE, J. After a jury trial in the Superior Court, the defendant was convicted of assault with intent to murder, assault by means of a dangerous weapon, and unlawful possession of a handgun with a barrel less than sixteen inches in length. The Commonwealth concedes that the evidence was insufficient to warrant conviction on the charge of unlawful possession of a handgun. As to the remaining charges, the defendant's principal contention on appeal is that the trial judge erred in admitting for its probative worth a police of-

ficer's testimony that the day following the shooting incident a witness to the shooting made a positive photographic identification of the defendant as the gunman. We conclude that there was error but that, in all the circumstances, it was harmless.

The charges arose out of an affray involving numerous young people who were leaving a party in the early morning hours on Athelwold Street in Dorchester section of Boston. In the course of the affray, John Haney, who happened upon the scene and became involved in a fight, was seriously wounded by gunfire. The main issue at trial was the identity of the gunman. We summarize the evidence on that point.

Haney heard shots but did not describe the gunman or make any identification. Two eyewitnesses, Tina Smith and Precious Nails, had known the defendant for several years. They testified that they saw the defendant arrive at the scene on a bicycle, ask, "[W]ho out here on the street say they want to fight," and then shoot in Haney's direction from the field. At the police station the day following the incident, Smith and Nails each selected the defendant's photograph from an array as the gunman in the field. Each of them also made an in-court identification of the defendant as the gunman.

Elvis Benjamin had come to Haney's assistance in the fight and had received a stab wound. He testified that he was present at the police station the next day when Smith and Nails were being shown photographs and that he selected a photograph of the person he was certain was the gunman in the field. At trial, Benjamin was neither shown any photograph nor asked if he could make an in-court identification, and he was not asked whose photograph he had selected. Detective George Foley later took the stand and was asked whose photograph Benjamin had selected. Defense counsel objected on grounds of hearsay and violation of the defendant's right of confrontation. The judge overruled the objection, and Detective Foley testified, based upon his familiarity with the defendant, that the photograph Benjamin had selected depicted

the defendant. He also testified that it was the same photograph that Smith and Nails had selected.

On appeal, the defendant contends that Detective Foley should not have been allowed to testify that Benjamin had made a prior identification of the defendant as the gunman.

Because of the superior probative worth of an identification made closer in time to the events in question, *Commonwealth* v. *Weichell*, 390 Mass. 62, 71 (1983), cert. denied, 465 U.S. 1032 (1984), extrajudicial identifications have been accepted as substantive evidence, notwithstanding their hearsay attributes, even when the declarant cannot or does not identify the defendant at trial. See *Commonwealth* v. *Torres*, 367 Mass. 737, 738-739 (1975); *Commonwealth* v. *Fitzerald*, 376 Mass. 402, 408 (1978); *Commonwealth* v. *Vitello*, 376 Mass. 426, 458-459 (1978); *Commonwealth* v. *Cappellano*, 17 Mass. App. Ct. 272, 276 (1983), *S.C.*, 392 Mass. 676 (1984). On occasion, when a witness acknowledges at trial that he made a prior identification but cannot or will not identify the defendant at trial, testimony about the witness's identification from a person who observed it has been allowed. *Commonwealth* v. *Fitzgerald*, 376 Mass. at 409. *Commonwealth* v. *Vitello*, 376 Mass. at 459-460. *Commonwealth* v. *Cappellano*, 17 Mass App. Ct. at 276. For such evidence to be admissible, it must be reliable, and its use must not deprive the defendant of his right of confrontation. Generally, if both the identifying witness and the person who observed the identification are available at trial for cross-examination, the defendant's right of confrontation will be deemed to have been satisfied. In this case, Benjamin acknowledged making an unqualified earlier identification of the gunman, and both he and Detective Foley, who testified that the photograph selected was of the defendant, were available for cross-examination.

The defendant's contention that the judge erred in allowing Detective Foley's testimony concerning Benjamin's selection of the defendant's photograph is essentially twofold: he claims that the testimony was insufficiently reliable to justify its allowance; and he claims that, because the prosecu-

tion never asked Benjamin whether he recognized the photograph about which Detective Foley testified, the defendant was deprived of the opportunity, essential to his right of confrontation, to conduct effective cross-examination with respect to that identification.

In *Commonwealth* v. *Daye*, 393 Mass. 55, 62 (1984), the court held that testimony from a police officer corroborating a witness's out-of-court photographic identification should not have been admitted because there was a material discrepancy between the officer's and the witness's descriptions of the identification and because it was only the officer who established that the photograph was one of the defendant. The probative worth of the officer's testimony was viewed in that situation as being "outweighed by 'the hazard of error or falsity in the reporting' " (citation omitted). *Id.* at 61. See *Commonwealth* v. *Seminara*, 20 Mass. App. Ct 789, 796-797 (1985); *Commonwealth* v. *Bassett*, 21 Mass. App. Ct. 713, 719 (1986). Compare *Commonwealth* v. *Morgan*, 30 Mass. App. Ct. 685, 690-691 (1991). In this case, there was no inconsistency between the description of the identification given by Benjamin and that given by Detective Foley. Compare *Commonwealth* v. *Daye*, 393 Mass. at 60 n.8. Contrast *Commonwealth* v. *Amado*, 387 Mass. 179, 187 (1982). It was only Detective Foley's testimony, however, that established that Benjamin had selected the defendant's photograph. Nevertheless, in the circumstances of the present case, we do not think there was such a significant "hazard of error or falsity in the reporting" that Detective Foley's testimony was unreliable.

Smith and Nails had known the defendant for years. Their testimony that the photographs they had selected were of the defendant was virtually unimpeachable. Detective Foley testified that all three had chosen the same photograph at the police station the day after the incident. Thus, there was a solid basis, even apart from Detective Foley's opinion that the person depicted in the photograph appeared to him to be the defendant, for his testimony that Benjamin had selected a photograph of the defendant. Certainly, in light of the pur-

pose of the rule recognizing the hearsay exception for prior identification evidence, the mere fact that at the time of trial the eyewitness might no longer remember what the gunman looked like, and therefore might no longer be able to recognize a photograph he selected earlier, should not bar evidence of the prior identification. There can be little doubt, based on all the testimony, that Detective Foley testified reliably with respect to the photograph selected by Benjamin.[1]

*Commonwealth* v. *Daye*, 393 Mass. at 62-63, also held, however, that the Commonwealth's failure to ask the identifying witness at trial whether he was able at that time to recognize the photograph he had earlier selected precluded the police officer's testimony that the identifying witness had selected the defendant's photograph. "The Commonwealth cannot improve its position by declining to ask the identifying witness to select at trial the photograph previously identified." *Id.* at 62-63. We conclude that, because the Commonwealth failed to establish the necessary foundation for Detective Foley's otherwise admissible testimony, the judge should not have overruled the objection from defense counsel based on the defendant's right of confrontation.

We now apply the court's reasoning in *Daye* (*supra* at 62) to the facts of this case. Had Benjamin been questioned about the photograph and denied that it was the one he had selected, Detective Foley's testimony would have been inadmissible for its probative worth. See *Commonwealth* v. *Swenson*, 368 Mass. 268, 273 n.3 (1975); *Commonwealth* v. *Furtick*, 386 Mass. 477, 481 n.2 (1982). Had Benjamin identified the photograph as the one he had earlier selected, the officer's testimony would have been admissible as substantive evidence but defense counsel could have cross-examined Benjamin with respect to his identification. Even had Benjamin responded that his memory had faded and he was no longer able to identify the gunman, a fact of which the jury should have been informed, defense counsel could have explored the

---

[1]It would be helpful, in such situations, for the Commonwealth to present evidence that a photograph selected by a witness soon after the commission of a crime was marked in some way to indicate that selection.

matter in cross-examination before Detective Foley gave his testimony. Benjamin's availability for cross-examination about the identification, absent testimony from him whether he recognized the photograph or that his memory had faded, did not satisfy the confrontation requirement. The testimony Benjamin gave about the earlier photographic identification did not hurt the defendant, and cross-examination on the subject was, quite reasonably, very limited. Defense counsel should not have been required to risk eliciting damaging evidence, or to "put his client's head in the lion's mouth," *Commonwealth* v. *Seminara*, 20 Mass. App. Ct. at 796, by recalling Benjamin after Detective Foley gave his testimony.

Although there was error in the admission of Detective Foley's testimony, we think it had but slight, if any, effect on the jury verdict. See *Commonwealth* v. *Perez*, 411 Mass. 249, 261 (1991). Contrast *Commonwealth* v. *Seminara*, 20 Mass. App. Ct. at 798, and cases cited. In *Seminara*, although there was strong circumstantial evidence and evidence of flight, there was no identification testimony other than the erroneously admitted equivocal identification. In this case, two eyewitnesses, who were well acquainted with the defendant, selected the defendant's photograph the day after the crime and identified him in court as the gunman. In addition, the defendant made a statement to the police placing himself at the scene during the affray. Several witnesses testified that the person who did the shooting was on a bicycle, and the defendant's girlfriend confirmed that he had a bicycle with him that night. At the time of the shooting, the defendant was in a position to observe that his friends were involved in a fight with Haney and Benjamin. Thus, he had a possible motive for the shooting. The testimony of three eyewitnesses called by the defense was not substantially in conflict with the Commonwealth's version of the events. The three witnesses, who heard shots and immediately ran for cover, stated that after they heard shots they saw the defendant also running and that they did not see a gun in his hand. There are numerous plausible reasons why the witnesses might not have seen a gun in the defendant's hand even if he

had done the shooting. It is true that the prosecutor referred to Benjamin's identification in his closing argument and that he made a comment that was self-serving and improper. He said, "It would have been unfair to put [Benjamin] on the witness stand and ask [him] to point [the defendant] out again ten months later." It is hard to see, however, how that comment added anything to the strength of the Commonwealth's case.

There is no merit to the remaining arguments of the defendant on appeal. Except with respect to the weapon possession charge, there is ample evidence to sustain the guilty verdicts. There was no impropriety in the prosecutor's closing argument sufficient to justify setting aside the verdicts on grounds of prosecutorial misconduct.

Accordingly, with respect to the indictment charging unlawful possession of a handgun with a barrel less than sixteen inches in length, we vacate the judgment, set aside the verdict, and order entry of a judgment of not guilty. The judgments on the remaining indictments are affirmed.

*So ordered.*

BROWN, J. (concurring). Inadequate or defective police procedures (see *ante* at 470 n.1) are one thing, but the real vice here is the Commonwealth's decision to correct the defect by unfair means. Why can't the Commonwealth get it right? All defendants have a constitutionally guaranteed right to a fair trial, and it is the Commonwealth's responsibility "to strive earnestly to produce as close to an impeccable trial as is possible." *Commonwealth* v. *Harris*, 28 Mass. App. Ct. 724, 736 (1990) (Brown, J., concurring). I am certain this has been said more than a few times over the years. See, e.g., *Commonwealth* v. *McLeod*, 30 Mass. App. Ct. 536, 541 n.10 (1991), and cases cited therein. See also *Commonwealth* v. *Harris*, *supra* at 736 n.5.

Finally, my belief that thoughtlessness and lack of careful preparation rather than contrived unfairness precipitate the vast majority of the alleged errors presented on appeal still

remains, see (*Commonwealth* v. *Young*, 22 Mass. App. Ct. 452, 457 (1986) (Brown, J., concurring), but after nearly two decades of seeing the same transgressions continuously occurring, I must say that I am starting to have genuine doubts. Our profession and society deserve much better from public prosecutors.