COMMONWEALTH *vs.* RICHARD F. BERRIO.

Middlesex. December 6, 1989. - March 15, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Psychotherapist. Social Worker. Evidence,* Privileged communication, Testimony before grand jury, Prior inconsistent statement. *Waiver.*

The judge at a criminal trial correctly denied the defendant's motion to suppress his incriminating statements to two social workers, where the statements were disclosable by the social workers under G. L. c. 112, § 135 (*b*) & (*f*), and were voluntarily made in circumstances that did not entitle the defendant to Miranda warnings. [40-42] LIACOS, C.J., concurring.

The judge at a criminal trial correctly denied the defendant's motion to suppress his incriminating statements to a psychotherapist, where there was no patient-therapist relationship to which the privilege under G. L. c. 233, § 20B, with respect to such communications, would apply. [42-43] LIACOS, C.J., concurring.

At a criminal trial any error in the admission of the defendant's allegedly privileged statements to a psychotherapist was harmless, as the evidence was cumulative. [43] LIACOS, C.J., concurring.

At a criminal trial a witness's prior inconsistent testimony before a grand jury was properly admitted for its probative value under Proposed Mass. R. Evid. 801 (d) (1) (A), under the conditions set forth in *Commonwealth* v. *Daye*, 393 Mass. 55 (1984). [43-46] LIACOS, C.J., dissenting.

INDICTMENTS found and returned in the Superior Court Department on March 17, 1987.

A pretrial motion to suppress evidence was heard by *Paul A. Chernoff*, J., and the cases were tried before him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Walter H. Underhill, Jr., & Constance L. Rudnick* for the defendant.

*Michael Fabbri*, Assistant District Attorney (*Rosemary D. Mellor*, Assistant District Attorney, with him) for the Commonwealth.

O'CONNOR, J. After a trial by jury, the defendant was convicted on indictments charging him with indecent assault and battery on a child under fourteen, incest, and assault with intent to rape a child under the age of sixteen. Also, on an indictment charging him with rape of a child under the age of sixteen by force, the defendant was convicted of the lesser-included offense of statutory rape. On appeal, the defendant argues that his motion to suppress incriminating statements that he had made to two social workers and to a psychologist should have been allowed. He also contends that the trial judge erred by admitting in evidence for substantive purposes portions of the grand jury testimony given by the alleged victim, who was the defendant's daughter, and that, without such evidence, the proof at trial was inadequate as a matter of law to sustain the convictions. We transferred the case to this court on our own motion. We affirm the convictions.

We shall deal first with the question whether the defendant's admissions to the social workers and the psychologist should have been suppressed. We begin by outlining certain relevant statutorily mandated procedures, after which we summarize the most significant findings made by the motion judge, who also was the trial judge, which findings, we are satisfied, were supported by adequate evidence. Pursuant to G. L. c. 119, §§ 51A and 51B (1988 ed.), upon receiving a report of sexual abuse of a child, the Department of Social Services (department) conducts an investigation to see whether the report may be substantiated. If a report is substantiated, the department forwards a so-called 51B report to the office of the district attorney, and the department assigns a social worker to the case to assist family members in dealing with the situation.

The judge found that, on November 16, 1986, the department received a report of the defendant's sexual abuse of his children. As a result, the department assigned Carole Bull, a

department social worker, to investigate the report for sub-
stantiation. In the course of her investigation, Bull inter-
viewed the defendant on November 18, 1986. Sally Hajjar,
another department social worker, was present at the inter-
view as an observer. The defendant "appeared depressed and
upset at the interview and, although he had been drinking, he
was sober." The defendant made several incriminating state-
ments. He also spoke of having suicidal thoughts, which led
Bull to refer him to a physician at the Center for Mental
Health in Waltham.

The judge found that "[o]n November 21, 1986 the abuse
was substantiated," and Hajjar was the social worker as-
signed to the case. Over the following six weeks Hajjar had
four personal interviews and two telephone conversations
with the defendant. The defendant made several admissions
concerning the charges.

According to the judge's findings, the department referred
the defendant's wife, the children, and the defendant to Chil-
dren's Charter, Inc., a counseling and treatment center. The
purpose of referring the defendant to Children's Charter was
"to aid in the [department] assessment process which was
ultimately intended to assist in a family service plan which
would address the needs of all of the family members." The
defendant's first visit to Children's Charter was on December
2, 1986, at which time Dr. William J. Purcell, a psychologist
and the clinical director of Children's Charter, told the de-
fendant that "a notice of [a] client's rights which promised
confidentiality," which had been given to the defendant, did
not apply to him. Dr. Purcell told the defendant that "he was
offering no confidentiality." According to the findings, the
defendant "was not told of the existence of the patient/psy-
chotherapist privilege. . . . [The defendant] was told that the
purpose of the evaluation was to help the family, protect the
children, and find a treatment program for him." At that
first interview, the defendant made several damaging admis-
sions. Subsequently, in mid-January, 1987, Dr. Purcell for
the first time asked the defendant "to sign written releases
for all information for transmittal to the [department] and to

the District Attorney's office." The defendant signed such releases.

The judge concluded his findings with the following statement: "It appears . . . that the [d]efendant elected to cooperate with the investigator Ms. Bull, the social worker Ms. Hajjar, and the evaluating therapist Dr. Purcell for a number of reasons including: discouraging publicity which would affect his job; encouraging eventual reintegration with the family; minimizing the possibility of the filing of criminal charges; and once charges were filed minimizing the likelihood of a disposition other than outpatient treatment."

Based on his findings and his view of the applicable law, the judge denied the motion to suppress. Before discussing the judge's reasoning and expressing our own views, we set forth the relevant statutory provisions. General Laws c. 112, § 135 (1988 ed.), provides with respect to social workers as follows: "No social worker in any licensed category . . . and no social worker employed in a state, county or municipal governmental agency, shall disclose any information he may have acquired from a person consulting him in his professional capacity or whom he has served in his professional capacity except: . . . (b) that a licensed certified social worker . . . licensed social worker . . . or a social worker employed in a state, county, or municipal agency, shall not be required to treat as confidential a communication that reveals the contemplation or commission of a crime or harmful act; . . . (f) where the social worker has acquired the information while conducting an investigation pursuant to section fifty-one B of chapter one hundred and nineteen . . . ." The other relevant statute pertains not to social workers but to psychotherapists. General Laws c. 233, § 20B (1988 ed.), provides in relevant part that, "in any court proceeding . . . a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition."

The judge reasoned that the information obtained from the defendant by Bull and Hajjar during Bull's investigation was disclosable under G. L. c. 112, § 135 (*f*), and the information subsequently acquired by Hajjar relative to the defendant's criminal acts was disclosable under § 135 (*b*). The judge also concluded that "[t]here [was] nothing in the actions of the [department] investigator [Bull], the observing social worker [Hajjar], or the [d]efendant himself that raises a reasonable doubt as to the voluntariness of his [November 18, 1986] statement to Ms. Bull." We agree with the judge that the defendant's incriminating statements to Bull and Hajjar were disclosable under § 135 (*b*) and (*f*). Also, we perceive no reason to disturb the judge's conclusion as to the voluntariness of the defendant's statements to Bull and Hajjar during Bull's investigation. Although there was conflicting testimony at the suppression hearing, the judge's subsidiary findings set forth above were warranted by the evidence, and the judge's conclusion from those findings that the statements were not coerced, and therefore were voluntary in the due process sense, was likewise warranted. Also, the judge was correct when he said that the defendant was not entitled to Miranda warnings before making admissions during Bull's investigatory interview, because the defendant was not in custody at that time.

The defendant correctly points out that, in his conclusions set forth in his memorandum dealing with the suppression motion, the judge neglected to discuss the voluntariness of the defendant's statements to Hajjar after the investigation had been concluded and the initial report to the department had been substantiated. We do not agree, however, that it follows either that the motion to suppress was erroneously denied or that it is necessary to remand the case for further findings. It is apparent from the judge's memorandum, including his subsidiary findings, that he was aware of the importance of the question whether the defendant's statements to the social workers had been voluntarily given. It is also apparent, not only from the memorandum but also from the judge's denial of the suppression motion, that the judge was

satisfied that the numerous statements sought to be suppressed were prompted not by coercion but by the defendant's decision that his cooperation would best serve his own interests.

We turn now to the question whether the judge rightly denied the defendant's motion to suppress his inculpatory statements to the psychotherapist, Dr. Purcell. The judge decided that the defendant's disclosures to Dr. Purcell were privileged pursuant to G. L. c. 233, § 20B, and that the only question, therefore, was whether the defendant voluntarily agreed to the disclosure of those communications, "and, if so, whether [the agreement] constituted the type of waiver that would authorize Dr. Purcell to testify at trial." The judge concluded that, at the first meeting between the defendant and Dr. Purcell, when Dr. Purcell told the defendant that the "Notice of Client's Rights" did not apply to him and Dr. Purcell was not promising any confidentiality, the defendant orally waived his privilege to prevent Dr. Purcell from testifying concerning the defendant's communications. As to the written releases obtained by Dr. Purcell, the judge concluded that, in requesting and obtaining them, Dr. Purcell was not acting as an agent of the State. He did not, however, explicitly rule on whether those releases, in addition to the defendant's perceived oral waiver at the first meeting, constituted a waiver of the patient-psychotherapist privilege.

We need not decide whether the c. 233, § 20B, privilege obtained, nor, if it did, need we decide whether the privilege was waived, because, even if we were to determine favorably to the defendant that there was such a privilege and it was not waived, the judge's failure to suppress the communications would constitute nonprejudicial error. Whether the communications were subject to the statutory privilege depends on whether the defendant was Dr. Purcell's patient. The findings that (1) the defendant was referred not to Dr. Purcell but to a physician at the Center for Mental Health in Waltham because of his suicidal thoughts; (2) the defendant cooperated with Dr. Purcell in order to minimize the legal impact of the charges and the impact of the charges on his

family and job; and (3) Dr. Purcell told the defendant that
he was not promising confidentiality, strongly suggest, al-
though we do not decide the question, that the defendant did
not consult Dr. Purcell for treatment or diagnosis incidental
to treatment, and that therefore the relationship was not that
of patient and psychotherapist and G. L. c. 233, § 20B, did
not apply.

If the statute were to apply, and we were to consider
whether the defendant waived the privilege, we are at least
doubtful as to whether we would agree with the judge that
the defendant waived the privilege. It must be remembered
that the statutory privilege is to prevent the psychotherapist
from testifying in a court proceeding. It is surely arguable
that the defendant's acquiescence in Dr. Purcell's asserted
reservation of the right to report his communications to the
department and the district attorney in no way amounted to
an irrevocable relinquishment of the privilege to prevent Dr.
Purcell's testimony at trial.

We do not resolve these or other related questions raised
by the parties because we are satisfied that, even if the judge
erred in not suppressing the defendant's communications to
the psychotherapist, the psychotherapist's testimony added
nothing of harmful consequence to the testimony of the so-
cial workers, which we have held was properly admitted. In
his trial testimony, the defendant admitted that he had made
numerous fully inculpatory statements to the social workers.
He simply took the position that, in making those statements,
he was operating on the assumption that it would be better
for him if he, in effect, told them what they wanted to hear.
Since there was no dispute about whether the admissions
were made, or that there was an essential difference between
the admissions made to the social workers and those made to
Dr. Purcell, nothing turned on the identity of the person or
persons to whom the admissions were made, and Dr. Pur-
cell's testimony, even if erroneously admitted, could not have
harmed the defendant.

Having decided that there was no reversible error in the
denial of the motion to suppress, we now reach the last ques-

tion presented by this case. That question is whether the trial judge erred by admitting in evidence for substantive purposes four questions among many that had been put to the alleged victim in the course of her testimony before the grand jury, and her answers to those four questions. In her testimony before the grand jury, the alleged victim had stated that the defendant had sexually abused her since she was about nine years old and on many occasions had had sexual intercourse with her since she was twelve. However, at trial, having been called as a witness by the Commonwealth, she testified that the sexual abuse had never happened and that she had lied to the grand jury and others because she was angry with her father. Over the defendant's objection, the judge admitted for their probative use the following questions and answers:

THE PROSECUTOR: "What did he touch you with between your  legs, what part of his body?"

THE WITNESS: "His fingers."

". . .

THE PROSECUTOR: "About how often did it happen when this  first started?"

THE WITNESS: "Almost every day."

". . .

THE PROSECUTOR: "What happened when you were about twelve?  What changed between what happened before and when you were about 12?"

THE WITNESS: "We had sexual intercourse."

". . .

THE PROSECUTOR: "How often would this happen . . . ?"

THE WITNESS: "Just about every day."

In *Commonwealth* v. *Daye*, 393 Mass. 55 (1984), we considered whether we should adopt Proposed Mass. R. Evid. 801 (d) (1) (A), thereby altering our common law rule that prior inconsistent statements are admissible only for impeachment purposes. Rule 801 (d) (1) (A) provides: "(d) Statements which are not hearsay. A statement is not hearsay if — (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . inconsis-

tent with his testimony and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." *Id.* at 56 n.1.

The defendant argues that *Daye* applies only to identification testimony, claiming that "the issue of identification has long been treated differently from other evidentiary issues." It is indeed true that in some ways the issue of identification has for a long time received unique treatment in our courts. However, in *Daye, supra* at 75, we simply adopted Proposed Mass. R. Evid. 801 (d) (1) (A) subject to conditions declared by us. Neither the rule nor *Daye* is limited to identification evidence.

The defendant argues that, even if *Daye* applies to this case, the judge erred in ruling that the four conditions to admissibility announced in *Daye* had been met. At the trial, the defendant's objection to the admission of the alleged victim's grand jury testimony was expressly premised only on the *Daye* rule's being limited to identification evidence and to the absence of one of the four conditions of admissibility set forth in that case, namely, that the grand jury testimony was free from coercion. There is no merit to the contention that freedom from coercion was not established. Before admitting the evidence, the judge expressed the view that the grand jury testimony had not been coerced. At the voir dire conducted earlier, there was substantial evidence supporting that view. The judge's finding is determinative.

On appeal, the defendant raises for the first time compliance with the other three conditions of admissibility announced in *Daye*. The defendant's new arguments fail to disclose "a serious and obvious error creating a substantial risk of a miscarriage of justice," *Commonwealth* v. *Pares-Ramirez*, 400 Mass. 604, 609 (1987); *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967), and therefore we reject them. We conclude that the portion of the alleged victim's grand jury testimony that was admitted in evidence at trial was properly admitted. As a consequence, we need not address the defendant's argument that, without the grand jury testimony, there was insufficient evidence to corroborate the

defendant's admissions to the social workers to permit the convictions to stand.

*Judgments affirmed.*


LIACOS, C.J. (concurring in part and dissenting in part). I agree with the court's analysis pertaining to the issues raised by the defendant as to the matters of alleged privilege. I cannot agree, however, with the court's treatment of the admissibility of prior inconsistent statements previously made before a grand jury. The court concludes that the grand jury testimony, under the guise of the so-called *Daye* rule (*Commonwealth v. Daye*, 393 Mass. 55 [1984]), properly was admissible as probative evidence of guilt. See Proposed Mass. R. Evid. 801 (d) (1) (A). I need not detail my views on the deficiencies of such a departure from well founded common law evidentiary rules, as I have stated them at length in my separate opinion in *Daye*. It suffices to say that expediency prevails over experience once again, and that the court again overrides "a time honored rule, honed in experience, developed to enhance the process of discovering the truth in favor of a rule of expedience that enhances the likelihood of convictions." *Id.* at 79 (Liacos, J., concurring in part and dissenting in part). The result in this case shows the danger of such an approach, especially because the court declines to address the argument that "without the grand jury testimony, there was insufficient evidence to corroborate" the other evidence of guilt. *Ante* at 45.