COMMONWEALTH *VS.* ALAN H. CARP.

No. 98-P-0085.

Norfolk. December 18, 1998. - July 7, 1999.

Present: KASS, DREBEN, & SPINA, JJ.

*Evidence,* Admissions and confessions, Voluntariness of statement. *Constitutional Law,* Admissions and confessions. *Practice, Criminal,* Admissions and confessions, Voluntariness of statement.

A Superior Court judge correctly concluded, in light of the totality of the circumstances, that statements made by a criminal defendant during a non-custodial interview with a Department of Social Services investigator were involuntary, where the investigator misrepresented to the defendant that the interview was not a criminal investigation, stated that Miranda warnings were not required and that the defendant did not need an attorney, and failed to inform the defendant until the end of the interview that incriminating evidence would be passed on to the police. [231-234]

COMPLAINT received and sworn to in the Stoughton Division of the District Court Department on January 23, 1997.

A pretrial motion to suppress evidence was heard by *Robert B. Sheiber,* J.

An application for an interlocutory appeal was allowed by *John M. Greaney,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Brian A. Wilson,* Assistant District Attorney, for the Commonwealth.

*Michael J. Heineman* for the defendant.

SPINA, J. A single justice of the Supreme Judicial Court allowed the Commonwealth's application for interlocutory appeal from an order of a District Court judge allowing the defendant's motion to suppress statements he made to a Department of Social Services (department) investigator. The Commonwealth claims that the judge's findings of fact were not supported by

the evidence and that the judge erred in concluding that the defendant's statements were involuntary. We affirm.

We summarize facts found by the motion judge, with amplification from uncontested facts in the record, including the judge's oral findings of fact. Thomas L. Birch, an investigator with the department, was assigned to investigate a report filed pursuant to G. L. c. 119, § 51A. The report alleged that the defendant had sexually abused his ten year old daughter and her ten year old friend. In October, 1996, Birch and Officer Reichert of the Sharon police department observed, via a two-way mirror, a "SAIN"[1] interview with the friend conducted by a representative of the Norfolk County district attorney's office. Birch testified, and the judge found, that at the conclusion of the "SAIN" interview they determined that there was insufficient evidence to pursue a criminal investigation. They decided that Birch rather than Officer Reichert should interview the defendant because Birch would be able to obtain more evidence than a police officer.

On October 24, 1996, Birch went to the defendant's home. He told the defendant that, as a result of a report of possible sexual abuse of the defendant's daughter's friend, he was there to conduct a social services interview for the benefit of the children, the family, and the department. Birch also told the defendant that, because this was not a criminal investigation, he was not accompanied by a police officer[2] and did not need to advise the defendant of his Miranda[3] rights.

During the course of the interview, the defendant made incriminating statements.[4] Concerned about how intently Birch had been listening to him, the defendant asked Birch whether he should have an attorney present. Birch responded that it was "one of his rights, [but that] it wasn't necessarily necessary at that point in time." Toward the end of the interview, after the

---

[1]Sexual Abuse Investigation Network.

[2]Birch testified that he also had told the defendant at the outset that he (defendant) did not have to speak with him, but the judge made no finding on this point.

[3]*Miranda* v. *Arizona*, 384 U.S. 436 (1966).

[4]The content of the statements is not clear from the record. Birch testified that the defendant told him that his daughter's friend spent a lot of time at his home, including overnights; that the defendant acknowledged being "very affectionate" with his daughter and her friend, including kissing and hugging the girls; and that Birch and the defendant had discussed whether the defendant had offered his daughter's friend money for anything, including hugs.

defendant had incriminated himself further, Birch told the defendant that his conduct was criminal and that evidence of potentially criminal acts "could" be given to the district attorney. At the end of the interview, Birch told the defendant that the investigation would continue and that he would be in further contact with the defendant.

The judge found, and the defendant conceded, that the defendant did not make his statements as a result of a custodial interrogation, and that *Miranda* v. *Arizona*, 384 U.S. 436 (1966), was therefore inapplicable. See *Commonwealth* v. *Larkin*, 429 Mass. 426, 432 (1999), quoting from *Illinois* v. *Perkins*, 496 U.S. 292, 297 (1990) ("Miranda warnings are only necessary where one is the subject of 'custody and official interrogation' "). See also *Commonwealth* v. *Berrio*, 407 Mass. 37, 41 (1990) (defendant not in custody during interview by the department's investigator to substantiate a 51A report and therefore not entitled to Miranda warnings).

The judge discredited parts of Birch's testimony and found that Birch's characterization of the interview as a "social service interview" was a contrivance to advance prosecution interests and obtain evidence against the defendant; that Birch and the police officer decided that Birch would be able to obtain more evidence than the officer; and that Birch lulled the defendant into a false sense of security regarding the nature and purpose of the interview by placing him "in a mental frame of mind so that he felt free to speak without fear of incriminating himself." The judge concluded that a "sufficient degree of mental coercion" existed such that the defendant "responded with information he otherwise would have refused to provide had he been aware of the criminal nature of the interview," and suppressed the statements as involuntary.

"In reviewing whether a statement was made voluntarily, we accept the judge's subsidiary findings of fact unless not warranted by the evidence. *Commonwealth* v. *Tavares*, 385 Mass. 140, 144-145, cert. denied, 457 U.S. 1137 (1982). The judge's ultimate findings, while open for review, are afforded 'substantial deference.' " *Commonwealth* v. *Raymond*, 424 Mass. 382, 395 (1997) (citations omitted).

Although the *Miranda* decision was not implicated here,[5] "the admissibility of [the defendant's] statements at trial is governed by the due process standard of .voluntariness." *Commonwealth* v. *Mahnke*, 368 Mass. 662, 679 (1975), cert. denied, 425 U.S. 959 (1976). See *Jackson* v. *Denno*, 378 U.S. 368, 376 (1964). See also *Commonwealth* v. *Berrio*, 407 Mass. at 41-42 (question at motion to suppress statements made to department social worker is voluntariness of statements). " 'Due process requires the Commonwealth to persuade the judge . . . that the statement was voluntary before it is admitted at trial,' and Massachusetts's 'humane practice' requires that the Commonwealth prove voluntariness beyond a reasonable doubt, first to the judge, and, if the judge finds the statement voluntary, the jury, too, must be persuaded beyond a reasonable doubt that the statement is voluntary. Otherwise it must be disregarded." *Commonwealth* v. *Berg*, 37 Mass. App. Ct. 200, 203 (1994), quoting from *Commonwealth* v. *Tavares*, 385 Mass. at 151-152. See Liacos, Massachusetts Evidence § 9.1 (6th ed. 1994 & Supp. 1999). The same analysis applies to statements made to private individuals as to police officers. *Commonwealth* v. *Bandy*, 38 Mass. App. Ct. 329, 331 n.1 (1995), citing *Commonwealth* v. *Allen*, 395 Mass. 448, 456 (1985). See *Commonwealth* v. *Benoit*, 410 Mass. 506, 511 (1991) ("A confession [or admission], whether made to police or to a civilian, is admissible only if it is voluntarily made").[6]

"The test for voluntariness of a confession is 'whether, in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act.' " *Commonwealth* v. *Souza*, 428 Mass. 478, 483-484 (1998), quoting from *Commonwealth* v. *Raymond*, 424 Mass. at 395. See *Frazier* v. *Cupp*, 394 U.S. 731, 739 (1969). See also *Commonwealth* v. *Magee*, 423 Mass. 381, 387-388 (1996). "There is no easy acid test for voluntariness." *Commonwealth* v. *Mahnke*, 368 Mass. at 680.

---

[5]Even if not required, whether Miranda warnings were given is a factor to be considered under the due process standard of voluntariness. *Commonwealth* v. *Mandile*, 397 Mass. 410, 413 (1986).

[6]Thus, whether Birch was an agent of the police, as the defendant claims, is not controlling. Contrast *Commonwealth* v. *A Juvenile*, 402 Mass. 275, 278 (1988) (where a private citizen was functioning as an instrument of the police and the defendant was in custody, the defendant was entitled to Miranda warnings).

The traditional factors indicating voluntariness or lack thereof, see *Commonwealth* v. *Mandile*, 397 Mass. 410, 413 (1986) ("promises or other inducements, conduct of the defendant, the defendant's age, education, intelligence and emotional stability, experience with and in the criminal justice system, physical and mental condition, the initiator of the discussion of a deal or leniency [whether the defendant or the police], and the details of the interrogation, including the recitation of Miranda warnings"), are of little relevance to our discussion. In considering the totality of the circumstances of the interview, the judge properly relied on Birch's failure to inform the defendant that incriminating evidence would be passed on to the police, particularly Birch's mischaracterization of the interview as a "social services" interview. While the judge made no finding that Birch intentionally failed to tell the defendant that incriminating evidence would be relayed to police, the judge was entitled to consider the effect on the defendant of Birch's misrepresentation, intentional or not. Birch testified, and the judge found, that he was legally obligated, pursuant to G. L. c. 119, § 51B(4), and 110 Code Mass. Regs. §§ 4.50-4.53 (1993), to inform the police of any incriminating evidence obtained during the interview. See generally *Commonwealth* v. *Berrio*, 407 Mass. at 38 (if a 51A report is substantiated, department files a 51B report with the office of the district attorney).

"Misinformation by the police does not necessarily render a confession involuntary," but it is a factor to be considered. *Commonwealth* v. *Raymond*, 424 Mass. at 395. See *Commonwealth* v. *Meehan*, 377 Mass. 552, 563 (1979), cert. dismissed, 445 U.S. 39 (1980) ("Taken alone, the misinformation would not, we think, suffice to show 'involuntariness' . . . but the judge could view it as a relevant factor in considering whether the defendant's ability to make a free choice was undermined"); *Commonwealth* v. *Magee*, 423 Mass. at 389 ("police deception regarding the facts of a particular crime or the existence of evidence linking the defendant to the crime [does] not, by itself, render a confession involuntary"). The significance of the distinction here is that the misleading information went to the nature of the interview, not the facts or evidence involved in the case. Birch aggravated his misrepresentation by stressing that he was not required to give Miranda warnings, implying that anything the defendant said would not

be used against him. Contrast *Commonwealth* v. *Selby*, 420 Mass. 656, 663 (1995), *S.C.*, 426 Mass. 168 (1997) (the use of "nonexistent incriminatory information" is not enough to tip the scale to a finding of involuntariness), with *Commonwealth* v. *Raymond*, 424 Mass. at 393, citing *Colorado* v. *Spring*, 479 U.S. 564, 576 (1987) (the defendant "must not be tricked or coerced into abandoning [Miranda] rights"), and *Commonwealth* v. *Jackson*, 377 Mass. 319, 325-329 (1979) (where police "pursue a course of conduct aimed at improperly convincing a defendant to relinquish the right to remain silent," statement should be suppressed). See *Commonwealth* v. *Meehan*, 377 Mass. at 564-565 (statement suppressed as involuntary where, inter alia, police misled defendant about the consequences of a confession).

While "[t]he presence of one or more factors suggesting a statement may have been made involuntarily is not always sufficient to render the statements involuntary," *Commonwealth* v. *Selby*, 420 Mass. at 664, on these facts the judge did not err in suppressing the statement. Based on Birch's representation to the defendant that the interview was not a criminal investigation and that he (Birch) did not need to give the Miranda warnings, that he (defendant) did not need an attorney, and his (Birch's) failure to inform the defendant until the end of the interview that any incriminating evidence would be relayed to the police or district attorney, the judge was warranted in concluding that the totality of the circumstances demonstrated that the defendant's will was overborne in that he was lulled into a false sense of security. Contrast *Commonwealth* v. *Berrio*, 407 Mass. at 42 (statements made to department social worker admissible where judge found them prompted not by coercion but "the defendant's decision that his cooperation would best serve his own interests"). The judge's subsidiary findings were supported by the evidence and his ultimate finding of involuntariness was warranted.

The defendant raises for the first time on appeal the requirements of 110 Code Mass. Regs. § 4.27(5) (1993), which provides that "[a]t the time of first contact with parent(s) or caretaker(s), the investigator shall deliver to said individual a statement of rights which shall include written notice that a 51A report has been made, the nature and possible effects of the investigation, and that information given could and might be used in subsequent court hearings." While the regulation was

not before the judge, the judge was evidently concerned that the defendant was not advised of the ramifications of his conversation with Birch.[7] Had the departmental regulation been an issue at the motion hearing, Birch's violation of it would have been another factor for the judge to consider in evaluating whether the defendant's statement was voluntary. It would not, in itself, mandate suppression. Compare *Commonwealth* v. *Caze*, 426 Mass. 309, 311-312 (1997) (where defendant is intentionally deprived of his right to make a telephone call pursuant to G. L. c. 276, § 33A, evidence obtained as a result should be suppressed; the same rule has not been extended to unintentional deprivations). See *Commonwealth* v. *Meehan*, 377 Mass. at 567 (police officer's failure "affirmatively to comply with [G. L. c. 276, § 33A,] is a factor in deciding whether a confession, vulnerable on other grounds, should be suppressed").

The order suppressing the defendant's statement is affirmed.

*So ordered.*

---

[7]After the court inquired of Birch what his duty would be regarding law enforcement following an initial investigation, the judge observed that, even though *Miranda* was inapplicable, "[the defendant] should have been given some kind of notice, I think. I think I'd want [some authority] that says that he's not to be advised — he doesn't have to be advised that what he says is going to be used against him."