COMMONWEALTH *vs.* RONALD BYRD.

No. 99-P-1911.

Suffolk. June 1, 2001. - September 26, 2001.

Present: BROWN, DOERFER, & COHEN, JJ.

*Constitutional Law,* Admissions and confessions. *Due Process of Law,* Decla-
ration against interest. *Evidence,* Admissions and confessions. *Practice,
Criminal,* Admissions and confessions, Voluntariness of statement.

At a criminal trial, the absence of Miranda warnings was not a specific factor
that a judge deciding a motion to suppress evidence had to weigh in
considering whether the intoxicated defendant's spontaneous inculpatory
statements, made in a context where Miranda warnings were not required,
were voluntary. [645-649]

INDICTMENTS found and returned in the Superior Court Depart-
ment on July 31, 1997.

A motion to suppress evidence was heard by *Margaret R.
Hinkle,* J., and the case was tried before *Catherine A. White,* J.

*Carlo A. Obligato,* Committee for Public Counsel Services,
for the defendant.

*Paul B. Linn,* Assistant District Attorney (*Edmond J. Zabin,*
Assistant District Attorney, with him) for the Commonwealth.

COHEN, J. Apprehended after a police chase, the defendant
made unsolicited incriminating statements to the arresting
officer. His motion to suppress these statements was denied. At
trial the statements were admitted into evidence and a Superior
Court jury convicted him of carjacking and other crimes.[1] Even

---

[1]The defendant was charged with assault with intent to steal a motor vehicle
("carjacking"), G. L. c. 265, § 21A; assault and battery on a police officer,
G. L. c. 265, § 13D; assault and battery by means of a dangerous weapon, to
wit, a shod foot, G. L. c. 265, § 15A(*b*); operating a motor vehicle and going
away after causing injury to a person, G. L. c. 90, § 24(2)(*a*½); unarmed rob-
bery, G. L. c. 265, § 19(*b*); and operating a motor vehicle while under the
influence of intoxicating liquor, G. L. c. 90, § 24(1)(*a*). The defendant was

though the statements were not the product of police interrogation, the defendant contends on appeal that, in determining whether these incriminating remarks were voluntary, the motion judge was required to consider that the defendant made them before being given Miranda warnings,[2] particularly in light of the fact that the defendant was visibly intoxicated at the time of his arrest. We conclude that it was not necessary for the motion judge to weigh explicitly the absence of Miranda warnings in assessing whether the defendant's statements were voluntary, and we affirm the judgments of conviction.

1. *Facts.* "In reviewing whether a [defendant's] statement was made voluntarily, we accept the [motion judge's] subsidiary findings of fact unless not warranted by the evidence" and we accord substantial deference to the judge's ultimate findings. *Commonwealth* v. *Carp*, 47 Mass. App. Ct. 229, 231 (1999). In this case, the judge's factual findings were thoroughly supported by the suppression hearing testimony of the arresting officer, Trooper Paul McCarthy, whom the motion judge found to be "entirely credible." The pertinent facts, gleaned from the findings and the officer's testimony, may be summarized as follows.

On June 19, 1997, Trooper McCarthy was assigned to the Roxbury District Court. At approximately 2:20 P.M., he heard a radio call concerning the carjacking of a brown 1990 Mercury Sable automobile, with a partial license plate number of 826. About an hour and a half later, the trooper left the courthouse in his cruiser. As he drove to his next destination, he picked up a coded signal on his LoJack reader, indicating the nearby presence of a stolen car. He called the dispatcher and learned that the car registered to that code was a brown 1990 Mercury Sable with license plate 826-ZSC. At first, the trooper was unable to locate the source of the signal, but then he picked it up directly in front of the cruiser. The trooper observed a Mercury Sable matching the description and license plate of the stolen car, traveling on the opposite side of the road. Trooper McCarthy called for additional police officers and followed the Sable.

---

convicted on all charges except the charges of assault and battery on a police officer and assault and battery by means of a dangerous weapon.

[2]See *Miranda* v. *Arizona*, 384 U.S. 436 (1966).

Both the cruiser and the Sable became trapped in rush hour traffic. After both cars were completely stopped, the trooper left the cruiser and ran ahead to the Sable. The driver, whom the trooper later identified as the defendant, sounded the car's horn, and the traffic parted sufficiently to permit him to pull the Sable onto another street. Trooper McCarthy went back to the cruiser and followed. Soon, the trooper observed the Sable reducing its speed as it approached a group of children in the street. Then, after briefly losing sight of it, the trooper saw the Sable rotating backwards, evidently as the result of a collision.

At that point, the defendant and a passenger emerged from the Sable and fled on foot. The trooper chased the defendant for about 400 to 500 yards. When the defendant leaped over a fence, the trooper vaulted after him and landed on him. A fight ensued, during which the defendant kicked the trooper in the leg. The trooper's leg had been injured previously, and as a result of the fight, it went entirely numb. Nevertheless, the trooper managed to subdue the defendant and place him under arrest.

As the trooper and the defendant began to walk to the trooper's car, the defendant spontaneously stated that he would be going to jail for life. The trooper's only reply was that he "wished [the defendant] was," but that he doubted it very much. The defendant then volunteered that he had a prior criminal record and gave an unsolicited account of what had happened. He said that he and a friend had accosted and "beaten down" (intimidated) the driver of the Sable, and that the two had not hurt the driver, but had taken his money as well as the car. The defendant also told the trooper that he and his friend had gone out drinking and that because the defendant had been "in the system," he should have known better than to drive around in a car that he had just stolen. The trooper, who was preoccupied with the injury to his leg and the security of his weapon, did not say anything in response.

When they got back to the cruiser, the trooper turned the defendant over to another officer, Trooper DiNatale, who had come on the scene. The defendant continued to lament that he would be sent back to prison and would be there for life. After leg shackles were placed on him, the defendant became belligerent, dropped to his knees and refused to move. The officers

dragged him to Trooper DiNatale's cruiser, where the defendant spat in DiNatale's face.

Trooper McCarthy testified that, based on his observation of a strong smell of alcohol and the defendant's unsteady movement, glassy eyes, slurred speech and emotional volatility, he believed the defendant was inebriated.[3] However, the trooper also observed that the defendant was able to walk on his own and told his story coherently.

The defendant was cited at the scene for operating a motor vehicle under the influence of alcohol. He then was brought to the police station, where he first received his Miranda warnings. Later, he was transported to the hospital to be treated for injuries sustained during the accident. The defendant did not need medical attention for intoxication.

2. *Discussion.* "The procedural safeguards of *Miranda* are required not where a suspect is merely in police custody, but rather where a suspect is subjected to custodial interrogation." *Commonwealth* v. *Torres*, 424 Mass. 792, 796 (1997). Thus, Miranda warnings must be given "only when a person in custody is subjected to either express questioning or its functional equivalent." *Commonwealth* v. *Sheriff*, 425 Mass. 186, 197 (1997). Statements which are spontaneous, unprovoked and volunteered by a defendant are "not the product of a custodial interrogation conducted in violation of rights which Miranda warnings were designed to protect." *Commonwealth* v. *Diaz*, 422 Mass. 269, 271 (1996).

The defendant does not contend on appeal that the unsolicited statements which he made after being taken into custody were elicited by interrogation; nor does he argue directly that Miranda warnings had to be given as soon as he was apprehended. Rather, the defendant contends that, even if Miranda warnings were not required, their absence was a specific factor that the motion judge had to weigh in considering whether the defendant's inculpatory statements were voluntary.

"It is well established that due process is violated when a conviction is based, in whole or in part, upon an involuntary

---

[3]At trial, there was evidence that the defendant was administered a breathalyzer test approximately six hours after his arrest. The reading was between .16 and .17.

confession." *Commonwealth* v. *Brady*, 380 Mass. 44, 48 (1980). Thus, even in circumstances where Miranda warnings are not necessary, the question of the voluntariness of the defendant's statements remains an issue that must be separately considered, see *Commonwealth* v. *Nadworny*, 396 Mass. 342, 367-368 (1985), cert. denied, 477 U.S. 904 (1986), and proved by the Commonwealth beyond a reasonable doubt. *Commonwealth* v. *Simmons*, 417 Mass. 60, 65 (1994).

"The test for voluntariness . . . is 'whether, in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act.' " *Commonwealth* v. *Souza*, 428 Mass. 478, 483-484 (1998), quoting from *Commonwealth* v. *Raymond*, 424 Mass. 382, 395 (1997). *Commonwealth* v. *Carp*, 47 Mass. App. Ct. at 232. "Relevant factors include, but are not limited to, 'promises or other inducements, conduct of the defendant, the defendant's age, education, intelligence and emotional stability, [the defendant's] experience with and in the criminal justice system, [the defendant's] physical and mental condition, . . . [whether the defendant or the police initiated the discussion], and the details of the interrogation, including the recitation of Miranda warnings.' " *Commonwealth* v. *Magee*, 423 Mass. 381, 388 (1996), quoting from *Commonwealth* v. *Selby*, 420 Mass. 656, 663 (1995). However, "[t]he presence of one or more factors suggesting a statement may have been made involuntarily is not always sufficient to render [it] involuntary." *Commonwealth* v. *Scott*, 430 Mass. 351, 355 (1999), quoting from *Commonwealth* v. *Selby*, 420 Mass. at 664. Furthermore, it is axiomatic that factors that are not germane need not be addressed. See, e.g., *Commonwealth* v. *Carp*, *supra* at 233 (noting that a number of the "traditional factors" were of "little relevance" to the discussion).

In this case, the motion judge was well aware that the defendant's statements were made before he received Miranda warnings, and correctly concluded that the warnings did not need to be given immediately upon arrest because no interrogation took place. The judge then turned to the issue of voluntari-

ness, focusing exclusively and carefully upon the defendant's intoxication. See *Commonwealth* v. *Mello*, 420 Mass. 375, 383 (1995) ("special care is taken to review the issue of voluntariness where the defendant claims to have been under the influence of drugs or alcohol"). While recognizing that intoxication is a factor to be taken into consideration, the judge accurately observed that the defendant's intoxication alone did not mandate a finding that the statements were involuntary. *Ibid.* Instead, the key question is whether the statements were freely made and were the product of a rational mind, despite the defendant's intoxication. *Commonwealth* v. *Koney*, 421 Mass. 295, 304 (1995).

Here, there was ample support for the motion judge's determination that at the time of his encounter with the police, the defendant remained in possession of his faculties and that his statements were a rational response to the situation. The defendant had managed to evade capture for a substantial period of time during the chase. He had extricated the Sable from rush hour traffic. When he had encountered children in the street in front of him, he had reduced his speed to avoid them. He had fled on foot for 400-500 yards before vaulting a fence. The comments that he made after he was apprehended were lucid and coherent, and his repeated expressions of dismay that he would be returned to jail were a logical reaction to his arrest. Finally, until he was shackled and refused to cooperate, he had walked to the cruiser without assistance. All of these facts negated the argument that the defendant was too intoxicated to comprehend his situation and act rationally.

We disagree with the defendant's contention that the judge's analysis was flawed because, having determined that Miranda was not implicated, the judge did not then consider the absence of Miranda warnings on the voluntariness issue. To be sure, the presence or absence of Miranda warnings may be a relevant consideration in assessing the voluntariness of a statement that is made during custodial interrogation. See *Commonwealth* v. *Nadworny*, 396 Mass. at 369, and cases cited. However, when a defendant makes a statement in a setting where Miranda warnings are not required, it is not mandatory that their presence or

absence be taken into account on the issue of voluntariness. *Id.* at 369-370.

In *Commonwealth* v. *Nadworny, supra,* the Supreme Judicial Court held, in a case involving statements that were not made during custodial interrogation, that it was within the judge's discretion to exclude testimony concerning the giving or failure to give Miranda warnings when the issue of voluntariness was presented to the jury at trial.[4] We see no reason why evidence that is not required to be put before the jury during their later consideration of the voluntariness issue should nevertheless be a mandatory factor when the issue is first addressed by a judge on the defendant's motion to suppress. If anything, logic suggests that it is only the presence, and not the absence, of unneeded Miranda warnings that may be a relevant consideration. Where Miranda warnings are not required and the defendant nevertheless receives them, their presence may add support to a finding of voluntariness. However, we do not accept the converse proposition that the absence of Miranda warnings is a factor that tends to undermine the voluntariness of a statement that is made in circumstances where the warnings were not necessary.[5]

The defendant maintains that it makes a difference that he was noticeably intoxicated because, when a defendant is visibly impaired by alcohol or drugs, the police are required to take "[s]pecial care . . . to ensure that [the] defendant [does] not unknowingly relinquish[ ] his constitutional rights." See *Commonwealth* v. *Hooks,* 375 Mass. 284, 289 (1978); *Com-*

---

[4]At the trial of the present case, voluntariness did not remain a live issue and was not reconsidered by the jury. See *Commonwealth* v. *Benoit,* 410 Mass. 506, 511-512 (1991).

[5]*Commonwealth* v. *Carp,* 47 Mass. App. Ct. 229 (1999), is not to the contrary. In that case, we upheld a judge's finding of involuntariness in the context of an interview by a Department of Social Services investigator which was not custodial interrogation. However, there the investigator explicitly stressed to the defendant that the investigator was not required to give Miranda warnings, thereby implying that anything the defendant said would not be used against him. Because the nature of the interview was misrepresented and the defendant was deliberately misled about the consequences of making inculpatory statements, the confession was found to be involuntary. It was the investigator's coercive behavior that was dispositive, and not the absence of Miranda warnings in circumstances where they were not required.

monwealth v. *Lapka*, 13 Mass. App. Ct. 24, 32 n.8 (1982).[6] As a general proposition, this is true in the setting of custodial interrogation. However, it does not mean that the police must take steps to insure that an intoxicated suspect does not spontaneously make an inculpatory statement, or that the failure to do so may render an otherwise voluntary statement involuntary.

Such an interpretation goes beyond the purpose of the Miranda doctrine. Miranda safeguards were not intended to prevent a defendant from volunteering incriminating information. See *Miranda* v. *Arizona*, 384 U.S. 436, 478 (1966) ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today"). Rather, they were designed to "vest a suspect in custody with an added measure of protection against coercive police practices." *Rhode Island* v. *Innis*, 446 U.S. 291, 301 (1980). No such coercive practices were at work in this case.

*Judgments affirmed.*

---

[6]The defendant admits in his brief that "[i]t is unclear whether, had the defendant been advised, he would have heeded these warnings or whether he would have confessed nonetheless."